BAILEY v SCHAAF

Docket No. 295801. Submitted April 13, 2011, at Detroit. Decided August
18, 2011, at 9:05 a.m. Leave to appeal granted, 491 Mich 924.

Devon S. Bailey brought an action in Genesee Circuit Court against
Steven Schaaf, T. J. Realty, Inc., doing business as Hi-Tech Protec-
tion, Evergreen Regency Townhomes, Ltd., Radney Management
& Investments, and others for injuries suffered on August 4, 2006
while at a friend's apartment in a complex owned by Evergreen
and managed by Radney. Hi-Tech security guards William Baker
and Chris Campbell were on duty, patrolling the complex on the
night Bailey was injured. A resident had informed Baker and
Campbell that Schaaf was threatening people with a gun. Bailey
alleged that Baker and Campbell ignored the warning and that
Schaaf shot Bailey 10 to 15 minutes later. Bailey alleged that
Evergreen and others were liable for the shooting under theories
of negligence, premises liability, vicarious liability, and third-party
beneficiary contract. The court, Joseph J. Farah, J., granted a
countermotion brought by all defendants but Schaaf for partial
summary disposition pursuant to MCR 2.116(C)(10) and (I)(2)
concluding that Evergreen had no duty to provide security guards
and that liability did not attach because the security guards'
actions in handling the emergency were deficient. The court
subsequently dismissed Bailey's negligence claims against all
defendants except Schaaf. Finally, Bailey's contract claim was
dismissed because the unsigned documents that formed the basis
of Bailey's third-party beneficiary claim did not constitute a
contract. Bailey appealed.

The Court of Appeals *held*:

1. In response to Bailey's request for admissions, Evergreen
and Radney admitted that a draft contract with an effective date
preceding the shooting was a copy of a security agreement. The
court subsequently allowed them to amend their responses to deny
that claim after they discovered additional contract documents.
Within the time for completion of discovery, a party may serve on
another party a written request for the admission of the truth of a
matter within the scope of MCR 2.302(B), including the genuine-
ness of documents described in the request. MCR 2.312(A). A

matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of an admission for good cause. MCR 2.312(D)(1). The trial court's decision to allow Evergreen and Radney to amend their responses to Bailey's requests for admissions to include recently discovered security contracts was not an abuse of discretion because Bailey had ample opportunity to conduct discovery after the court's decision, the court reopened discovery several months later at Bailey's request to permit a deposition, and there was no evidence that Evergreen's and Rodney's initial failure to discover the documents was not inadvertent.

2. A contract is formed when there is an offer, an acceptance in conformance with the offer, and a meeting of the minds on all essential terms. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his or her assent to that bargain is invited and will conclude it. An objective standard is used to determine whether there has been a meeting of the minds, and the express words of the parties and their visible acts must be examined, not their subjective states of mind. The trial court did not abuse its discretion when it dismissed Bailey's claim that he was a third-party beneficiary of a contract between Hi-Tech and Evergreen to provide security services because there was no contract in effect on the date Bailey was shot that imposed an obligation on Hi-Tech with respect to guests of Evergreen's tenants. Taken together, evidence consisting of a fax cover page that referred to a July 28, 2006, proposed contract as a "draft which included most of the discussed items" and pages marked "draft," along with other qualifying comments, did not constitute an offer: the documents did not manifest a willingness on Hi-Tech's part to enter into a bargain with Evergreen in such a way as to justify another person in understanding that assent to that bargain was invited and would conclude it.

3. Premises possessors owe certain duties to visitors on their land. Under certain circumstances, landlords have a duty to protect invitees from forseeable criminal acts of third parties in common areas. However, the government is in the business of public safety, and a premises possessor has no duty to make the premises safer than the community at large. A premises possessor may not be held liable for voluntarily undertaking additional, but failed, safety precautions. As in the context of merchants and their invitees, a landlord has a duty to take reasonable efforts to contact the police in response to a situation presently occurring on the premises that poses a foreseeable and imminent risk of harm to

identifiable invitees. If security personnel Campbell and Baker were agents of Evergreen and Radney, they had a duty to contact the police on behalf of them once the resident informed them of the foreseeable and imminent risk of harm posed by Schaaf to lawful invitees on Evergreen's premises. The trial court did not err by dismissing Bailey's claims related to a duty by Evergreen and Radney to make the premises safe from criminal activity, but erred by dismissing Bailey's premises liability claim against Evergreen and Radney for failure to respond properly to the threat.

4. Bailey's negligence claim against Hi-Tech was properly dismissed because Bailey failed to identify a duty that was separate and distinct from Hi-Tech's duties under its contract with Evergreen. Hi-Tech's duties were created by the terms of the contract, and Bailey could not rely on those duties as he was not a party to or an intended beneficiary of the contract.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. PRETRIAL PROCEDURES — REQUEST FOR ADMISSIONS — WITHDRAWAL OF ADMISSIONS.

MCR 2.312(A) provides that within the time for completion of discovery, a party may serve on another party a written request for the admission of the truth of a matter within the scope of MCR 2.302(B), including the genuineness of documents described in the request; a matter admitted under MCR 2.312 is conclusively established unless the court on motion permits withdrawal or amendment of an admission for good cause under MCR 2.312(D)(1); when determining whether to allow amendment, the court should consider (1) whether allowing the amendment will aid in the presentation of the action, (2) whether the other party would be prejudiced by the amendment, and (3) the reason for the failure, that is, whether it was inadvertent.

2. LANDLORD AND TENANT — PREMISES LIABILITY — CRIMINAL ACTIVITIES — FORESEEABLE AND IMMINENT RISK OF HARM — DUTY TO SUMMON POLICE.

A landlord may be liable for creating, maintaining, or failing to rectify a condition on the land that the landlord should foresee will enhance the likelihood that his or her invitees will be exposed to criminal assaults; however, the government is in the business of public safety, and a landlord has no duty to make the premises open to the public safer than the community at large; a landlord may not be held liable for voluntarily undertaking additional, but failed, safety precautions, but a landlord has a duty to take reasonable efforts to contact the police in response to a situation

presently occurring on the premises that poses a foreseeable and imminent risk of harm to identifiable invitees.

*Donald M. Fulkerson* and *Robinson & Associates, P.C.* (by *David A. Robinson* and *Racine Michelle Miller*), for Devon S. Bailey.

*Pedersen, Keenan, King, Wachsberg & Andrzejak, P.C.* (by *Thomas E. Keenan*), for Evergreen Regency Townhomes, Ltd, T. J. Realty, Inc. doing business as Hi-Tech Protection, Radney Management & Investments, Timothy Johnson, William B. Baker, and Christopher L. Campbell.

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

PER CURIAM. In this suit seeking damages for injuries sustained in a shooting, plaintiff, Devon Scott Bailey, appeals as of right the trial court's final order entering a default judgment against defendant Steven Gerome Schaaf. We affirm in part and reverse in part the trial court's order and remand for further proceedings.

## I. OVERVIEW

There are three separate issues on appeal. The first is whether the trial court abused its discretion when it allowed defendant Evergreen Regency Townhomes, Ltd., the owner of the premises in question, and defendant Radney Management & Investments, the manager of the premises, to amend their responses to Bailey's requests for admissions. We conclude that the trial court's decision was not an abuse of discretion.

The second issue is whether the trial court abused its discretion when it dismissed Bailey's claim that he was a third-party beneficiary of a contract between Ever-

green and defendant T.J. Realty, Inc., doing business as Hi-Tech Protection, Inc., the company that provided "courtesy patrolling services" to the premises. We conclude that the trial court did not abuse its discretion because the evidence does not establish a question of fact regarding whether there was an agreement in effect on August 4, 2006 (the date on which Bailey was shot on the Evergreen premises), that imposed any obligation on Hi-Tech with respect to guests of Evergreen's tenants.

The third issue concerns the extent to which a premises possessor has a duty to respond to criminal acts. Relying on *MacDonald v PKT, Inc*,[1] we conclude that a premises possessor has a duty to take reasonable measures in response to an ongoing situation that is occurring on the premises, which means expediting the involvement of, or reasonably attempting to notify, the police. Our basic premise is that public safety is the business of the government,[2] and we emphasize that under the circumstances at issue, the *only* duty the owners and managers of apartment complexes have is to summon the police when, either directly or through their agents, they observe criminal acts in progress that pose a risk of imminent harm to identifiable invitees, whether tenants or guests, who are lawfully on their premises.

## II. BASIC FACTS

Evergreen owns the apartment complex where the shooting at issue occurred. In February 2003, Radney entered into a written agreement with Hi-Tech on behalf of Evergreen (the 2003 Contract). In the 2003

---

[1] *MacDonald v PKT, Inc*, 464 Mich 322; 628 NW2d 33 (2001).

[2] See *Johnston v Harris*, 387 Mich 569, 576; 198 NW2d 409 (1972) (BRENNAN, J., dissenting).

Contract, Hi-Tech agreed to provide Evergreen with "courtesy patrolling services." The 2003 Contract provided that it would "run for an initial period of one year from the date of this contract." Defendant, Timothy Johnson, the owner of Hi-Tech, signed on his company's behalf, John Barineau III signed on behalf of Evergreen and Radney, and Barbara Warren signed as the district supervisor for Radney.

In 2006, Johnson began to negotiate a new contract for security services with Mark Barineau, who was the vice president of Evergreen's general partner, Barineau GP, Inc. On August 21, 2006, and August 22, 2006, respectively, Barineau and Johnson signed a new agreement for security services with an effective date of August 28, 2006 (the 2006 Contract).

On August 4, 2006, before the date the 2006 contract was signed, Bailey went to a gathering at a friend's apartment in a complex owned by Evergreen. Defendants William Baker and Christopher Campbell were the Hi-Tech security guards on duty that day. Evergreen resident Laura Green went to Baker and Campbell and informed them that there was a man on the premises with a gun. She told them that he was waving the gun and threatening to shoot the guests and asserted later that she pointed to the area of the gathering and identified the man with the gun. Despite Green's warning Baker and Campbell chose instead to drive an intoxicated resident back to his apartment. However, they stated that they looked for a person fitting the description given by Green. Approximately 10 or 15 minutes after they dropped off the intoxicated resident, Campbell and Baker heard two gunshots. They then drove to the gathering, where they observed a man, later identified as Bailey, lying face down with two gunshot wounds in his upper back. Bailey suffered

severe injuries, including a spinal cord injury, a pulmonary contusion, and paraplegia.

Bailey sued Schaaf (the shooter), Hi-Tech, Johnson, and two unknown security guards in November 2007. Bailey alleged that defendants were liable for the shooting under theories of negligence, premises liability, and vicarious liability. Bailey later amended his complaint to specifically identify Campbell and Baker as the guards and state negligence claims against Evergreen and Radney. Bailey also added a third-party beneficiary contract claim against Hi-Tech, Radney, and Evergreen.

In February 2009, defendants[3] moved for partial summary disposition under MCR 2.116(C)(8). They argued that, with respect to the negligence claims, Bailey had failed to state a claim upon which relief could be granted because defendants did not owe him the legal duties identified in the complaint. Defendants argued that Campbell, Baker, and Johnson owed no legal duty to aid or protect Bailey; Evergreen owed no duty to provide security guards and did not voluntarily assume any duties to Bailey by hiring security guards; and Hi-Tech and Radney had no legal relationship to Bailey on which to premise a duty and did not have a derivative duty through Evergreen because Evergreen had no duty to a guest on its premises.

In March 2009, Bailey moved for partial summary disposition under MCR 2.116(C)(10). He asked the trial court to determine, as a matter of law, that Evergreen, Radney, and Hi-Tech owed him a duty on August 4, 2006. Bailey acknowledged that, under the 2003 Contract, it was clear that Hi-Tech had no duty to a tenant's guests. However, he argued that in July 2006, "there

---

[3] The motion was filed by all defendants, other than Schaaf. Any reference to "defendants" throughout the remainder of the opinion refers to all defendants other than Schaaf.

was a clear shift in position as to a specific duty or responsibility owed to the guest of a tenant." Bailey presented evidence that on July 26, 2006, Barineau sent a final draft contract, to be effective on July 28, 2006, that indicated the parties' intent to implement an "enhanced property protection plan." Barineau also included a signed authorization for Hi-Tech to increase its patrol hours. Bailey claimed that by virtue of these modifications, which were later incorporated into the 2006 Contract, Evergreen, Radney, and Hi-Tech voluntarily assumed duties to guests. Bailey also responded to defendants' motion under MCR 2.116(C)(8) by arguing that a landowner has a duty of reasonable care to protect identifiable invitees from the foreseeable criminal acts of third parties; the duty is triggered by specific acts occurring on the premises that pose a risk of imminent foreseeable harm to an identifiable invitee.

Following arguments on the motions in March 2009, the trial court dismissed the individual defendants after Bailey essentially declined to argue that there was any basis for holding them individually liable. The trial court also concluded that a landlord is under no duty to provide security guards. It further reasoned that if a landlord provides security guards who handle an emergent situation deficiently, liability does not arise from their actions because the voluntary provision of security does not create a greater responsibility on the part of the landlord. Thus, the trial court granted defendants' motion under MCR 2.116(C)(8). Without hearing arguments on the issue, the trial court also concluded that there was no contract in existence at the time of the shooting that extended Hi-Tech's responsibility to guests because only an unsigned draft existed at the relevant time. For these reasons, the trial court granted

defendants' countermotion for summary disposition under MCR 2.116(C)(10) and (I)(2) and denied Bailey's motion.

In May 2009, the trial court granted summary disposition in favor of defendants and ordered the dismissal of Bailey's negligence claims—counts 1 to 8—under MCR 2.116(C)(8). The trial court also denied Bailey's motion for partial summary disposition and granted defendants' motion with respect to count 9, Bailey's final claim, which involved a claim for breach of contract. The trial court noted that the order dismissed the case with respect to all defendants except Schaaf, to whom the order did not apply.

Bailey moved for reconsideration, arguing that the trial court had erred because defendants owed him a duty as a matter of law. He also argued that summary disposition on his contract claim was improper because defendants' "counter-motion," included with their response to Bailey's, was really a new motion that was not properly filed as such. Bailey asked the trial court to order defendants to refile their motion. The trial court denied Bailey's motion for reconsideration, but vacated the portion of its May 2009 order that dismissed Bailey's contract claim and ordered defendants to file a motion for summary disposition of that claim. Over defendants' objection, the trial court also subsequently reopened discovery to permit Bailey to depose Barineau.

In November 2009, defendants moved for summary disposition of Bailey's contract claim under MCR 2.116(C)(10). They argued that Bailey was unable to demonstrate that he was an intended third-party beneficiary of any contract between Evergreen and Hi-Tech because the documentary evidence conclusively showed that the only contract mentioning "guests" was not entered into until August 28, 2006. Bailey argued that

the contractual relationship between Evergreen and Hi-Tech was not limited to the 2003 and 2006 Contracts "but [was defined by] the series of negotiations including increasingly detailed contracts, each of which were legally binding as the undertaking progressed."

The trial court affirmed its earlier ruling and concluded that the documents circulated in July 2006 were in contemplation of the contract that was eventually executed in August 2006. It rejected the argument that the unsigned documents constituted a contract. Accordingly, the trial court entered an order dismissing Bailey's contract claim. The trial court also entered a default judgment against Schaaf for $1.5 million. This order resolved all claims and closed the case. This appeal followed.

### III. AMENDMENT OF ADMISSIONS

#### A. STANDARD OF REVIEW

We first address Bailey's argument that the trial court abused its discretion by permitting Evergreen and Radney to amend their responses to his requests for admission. This Court reviews for an abuse of discretion a trial court's decision on a party's motion to amend its admissions under MCR 2.312(D)(1).[4] A trial court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes.[5]

#### B. ANALYSIS

In response to Bailey's requests for admission, Evergreen and Radney admitted that a copy of a "draft" contract showing an effective date of July 28, 2006, "is

---

[4] *Medbury v Walsh*, 190 Mich App 554, 556; 476 NW2d 470 (1991).

[5] *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

a copy of the Contract Agreement Between [the parties]." They subsequently moved to amend their answers. They claimed that 45 days after their responses to Bailey's requests for admissions, they discovered two additional documents: the 2003 and 2006 Contracts. The trial court granted the motion, finding that Evergreen and Radney became aware of the 2006 Contract through "legitimate discovery in a timely fashion" and that Bailey would not be prejudiced if the motion were granted. Evergreen and Radney subsequently filed amended responses in which they denied that any of the July 2006 documents were binding agreements.

"Within the time for completion of discovery, a party may serve on another party a written request for the admission of the truth of a matter within the scope of MCR 2.302(B) stated in the request that relates to statements or opinions of fact or the application of law to fact, including the genuineness of documents described in the request."[6] "A matter admitted under [MCR 2.312] is conclusively established unless the court on motion permits withdrawal or amendment of an admission."[7] The court may allow a party to amend or withdraw an admission for good cause.[8]

In *Radtke v Miller, Canfield, Paddock & Stone*,[9] the Michigan Supreme Court addressed the distinction between "judicial" admissions and "evidentiary" admissions. In so doing, it explained that the "two vital purposes" of MCR 2.312 are " 'to facilitate proof with respect to issues that cannot be eliminated from the case,' " and " 'to narrow the issues by eliminating those

---

[6] MCR 2.312(A).

[7] MCR 2.312(D)(1).

[8] *Id.*

[9] *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 420-421; 551 NW2d 698 (1996).

that can be.' "[10] The Court further explained that the
purpose of a request for admission is to " 'establish
some of the material facts in a case without the neces-
sity of formal proof at trial,' "[11] and, unlike the eviden-
tiary admission, "the judicial admission, *unless allowed
by the court to be withdrawn,* is conclusive in the
case . . . ."[12]

In *Janczyk v Davis*,[13] this Court considered the
standards by which a trial court should decide a party's
motion to file *late* answers. It characterized the trial
court's task as "balanc[ing] between the interests of
justice and diligence in litigation."[14] Therefore, it
stated, the trial judge is to

> balance three factors in determining whether or not to
> allow a party to file late answers. First, whether or not
> allowing the party to answer late "will aid in the presen-
> tation of the action." In other words, the trial judge should
> consider whether or not refusing the request will eliminate
> the trial on the merits. . . . Second, the trial court should
> consider whether or not the other party would be preju-
> diced if it allowed a late answer. Third, the trial court
> should consider the reason for the delay: whether or not
> the delay was inadvertent.[15]

In light of the purposes of MCR 2.312 that the Court
articulated in *Radtke*[16] and the considerations it men-
tioned in *Janczyk*,[17] we conclude that the trial court's
decision to allow Evergreen and Radney to amend their

---

[10] *Id.* at 419-420 (citation omitted).

[11] *Id.* at 420 n 6 (citation omitted).

[12] *Id.* at 421 (emphasis added; citations omitted).

[13] *Janczyk v Davis*, 125 Mich App 683, 689-694; 337 NW2d 272 (1983).

[14] *Id.* at 691.

[15] *Id.* at 692-693 (citation omitted).

[16] *Radtke*, 453 Mich at 419-421.

[17] *Janczyk*, 125 Mich App at 692-693.

answers was not an abuse of discretion. Bailey had ample opportunity to conduct discovery after the trial court's decision. And the trial court also reopened discovery several months later—at Bailey's request and over defendants' objection—to permit Bailey to depose Barineau.

Nor is there any indication that defendants' initial failure to uncover the 2003 and 2006 Contracts was anything but inadvertent. The provision for trial court discretion to allow amendment or withdrawal shows that the rule's purpose of expediting and streamlining an action is not absolute. The situation here—in which two parties later learned that timely, initial responses had inadvertently failed to account for critical documents—is precisely the kind of possibility the reservation of trial court discretion in MCR 2.312(D)(1) addresses.

In summary, we conclude that the trial court did not abuse its discretion by permitting Evergreen and Radney to amend their responses to Bailey's requests for admissions.

IV. THIRD-PARTY BENEFICIARY

A. STANDARD OF REVIEW

We next address Bailey's argument that the trial court erred when it dismissed his claim that he was a third-party beneficiary of the contract between Evergreen and Hi-Tech. This Court reviews de novo a trial court's decision to grant summary disposition.[18] We also review de novo the existence and interpretation of a contract as a question of law.[19]

---

[18] *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

[19] *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

B. ANALYSIS

In order for a contract to be formed, there must be an offer, an acceptance in conformance with the offer, and a meeting of the minds on all essential terms.[20] An offer is " ' "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." ' "[21] "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind."[22]

On July 27, 2006, Barineau faxed Johnson several documents with a cover sheet that stated: "See attached letter in follow-up to our meeting of 7.25.06 along with draft contract which includes most of the items we discussed and written authorization to add additional patrol hours for the next 30 days." The "attached letter" was from Barineau to Johnson and was dated July 26, 2006. Also included in the faxed documents was a "Contract Agreement" bearing an effective date of July 28, 2006, marked "DRAFT" on each page and with notes in the margins, and "Post Orders" that are also marked "DRAFT" and bear an effective date of July 28, 2006. Finally, the documents include an "Authorization to Increase Patrol Hours," signed by Barineau and dated July 27, 2006, authorizing Hi-Tech to add additional patrol hours as specified in the document. Johnson ultimately signed a "draft" contract agreement bearing an effective date of July 28, 2006. Notably, in the signed copies that are part of the record, the spaces for the various fees on the second page are either

[20] *Id.* at 452-453.

[21] *Id.* at 453, quoting *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997).

[22] *Kloian*, 273 Mich App at 454 (citation and quotation marks omitted).

blank or have been obscured. Johnson's signature on this document is not dated. Johnson also signed, but did not date, the "DRAFT" "Post Orders" "[e]ffective July 28, 2006."

We agree with Bailey that Barineau and Johnson did have a "meeting of the minds" concerning certain obligations that would begin immediately, such as additional patrol hours and the rate increase for that service. But the dispositive question is whether there is a genuine issue of material fact regarding the existence, on August 4, 2006, of a specific obligation on the part of Hi-Tech with respect to Evergreen guests. That is, the question generally is whether the agreement clearly identified guests on Evergreen's property as third-party beneficiaries of the agreement. The only language in the relevant documents that mentions a duty to "guests" appears in the August 28, 2006, contract, which, by its terms, did not become effective until August 28, 2006, and in the July 28, 2006, "DRAFT" patrol services agreements. Thus, the question becomes whether there was an offer, acceptance, and a meeting of the minds, so that the "Duties" provision of the July 28, 2006, drafts constituted a contract between Evergreen and Hi-Tech on August 4, 2006.

The fax cover page refers to the attached "*draft* contract which includes *most of the items we discussed*," suggesting that it was not complete or final. In addition, the "property protection plan," which Evergreen and Hi-Tech were to implement "[e]ffective immediately," called for Evergreen to "[e]xecute [a] new one-year term contract" with Hi-Tech, "to include new provisions such as . . . ." This language suggests that the new contract had to be executed. The final paragraph of the letter again refers to a "final draft contract" and says, "Let me know your thoughts." In addition, Barineau

informed Johnson that he had sent a copy of the contract to Evergreen's insurance agent, who "may come back with a thought or two that we may have to include." This suggests that Barineau did not consider the language of the "draft" agreement he was sending to Johnson to have been finalized. Indeed, Barineau wrote that he "would like to finalize the contract no later than the week of July 31st." And, as repeatedly noted, the "contract" Barineau sent was marked "DRAFT" on each page and was not signed by Barineau.

Taken together, these documents did not manifest a willingness on Barineau's part to enter into a bargain in such a way as to justify another person in understanding that his or her assent to that bargain was invited and would conclude it.[23] Thus, the documents did not constitute an offer and we agree with the trial court that there is no genuine issue of fact concerning the existence of an agreement that specifically incorporated a duty to guests on August 4, 2006.

We note that we did not rely on Johnson's affidavit, to which Bailey objects on the basis that it contradicted Johnson's earlier deposition testimony. "[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition."[24] Even if we agreed that Johnson's affidavit contradicted his deposition testimony, it would not affect our analysis of whether Barineau made an offer that Johnson could accept with his signature given that we did not rely on the affidavit.

---

[23] See *Kloian*, 273 Mich App at 453.

[24] *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006).

V. THE DUTY TO RESPOND TO CRIMINAL ACTS

A. STANDARD OF REVIEW

We next address Bailey's argument that the trial court erred when it granted defendants' motion for partial summary disposition under MCR 2.116(C)(8) as to all his negligence claims and erred when it denied his motion for partial summary disposition under MCR 2.116(C)(10). This Court reviews de novo a trial court's decision to grant summary disposition.[25] Whether the common law imposes a duty on a party is also a question of law that this Court reviews de novo.[26]

The trial court dismissed Bailey's negligence claims under MCR 2.116(C)(8) because it concluded that Evergreen, Radney, and Hi-Tech owed no duty to Bailey that was distinct from any contractual duty. (Bailey has not appealed the trial court's order to the extent that it dismissed the claims against Johnson, Baker, and Campbell.) A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint using the pleadings alone.[27]

B. OVERVIEW

At the outset, we note the extreme nature of the ongoing situation at Evergreen on August 4, 2006. This was not an animated discussion among friends. It was not a domestic quarrel. It was not an argument in which fighting words were exchanged. It was not a sod-throwing incident similar to the one the *MacDonald*

---

[25] *Barnard Mfg*, 285 Mich App at 369.

[26] *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992).

[27] *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001); MCR 2.116(G)(5).

Court considered. It was not an occasion on which one person threatened another with a set of barbeque tongs or even a baseball bat. It was not a fistfight or a brawl. It was the most deadly circumstance of all: a man brandishing a gun—apparently in full view of two security guards—who threatened to fire, and ultimately did fire, that gun with near fatal consequences.

That being said, it is generally accepted that premises possessors owe certain duties to visitors on their land.[28] More specifically, under certain circumstances, as noted in *Stanley v Town Square Coop*,[29] landlords have a duty to protect their invitees from the foreseeable criminal acts of third parties in the common areas of the landlord's premises. That is, a landlord must exercise reasonable care to protect invitees from known or discoverable unreasonably dangerous conditions on the land, including using "reasonable care to protect tenants and their guests from foreseeable criminal activities in common areas inside the structures they control."[30] Accordingly, a landlord may be liable for creating, maintaining, or failing to rectify a condition on the land that the landlord should foresee will enhance the likelihood that his or her invitees will be exposed to criminal assaults.[31] But this duty is not absolute; it does not generally apply to areas that, although on the landlord's premises, are open to the public:

---

[28] *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000).

[29] *Stanley v Town Square Coop*, 203 Mich App 143, 148-150; 512 NW2d 51 (1993).

[30] *Id.*; see *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 502 n 17; 418 NW2d 381 (1988) (noting that "[s]hould a dangerous condition exist in the common areas of a building which tenants must necessarily use, the tenants can voice their complaints to the landlord").

[31] *Stanley*, 203 Mich App at 149-150 ("[L]andlords have a duty to take reasonable precautions, such as installing locks on doors and providing adequate vestibule lighting, and may be liable in tort if they fail to do so.").

"a landlord does not owe a duty to invitees to make open parking lots safer than the adjacent public streets."[32] This is because "we do not require the possessor of land to anticipate and protect against the general hazard of crime in the community."[33] And in the merchant context, in *MacDonald v PKT, Inc*[34] the Michigan Supreme Court adopted the basic principle that public safety is the business of the government and that a merchant's *only* responsibility when directly confronted with criminal activities is to summon the police. Today, we extend that principle to situations involving apartment complexes.

### C. THE EVOLUTION OF THE DUTY

#### 1. "PUBLIC SAFETY IS THE BUSINESS OF THE GOVERNMENT"

That premises possessors have no duty to make their premises safer than the community at large is not a recent idea. Justices and judges have enunciated it for decades. In his 1972 dissenting opinion in *Johnston v Harris*,[35] for example, Justice BRENNAN articulated a theme that the Court would pick up in later decisions. He said:

> Public safety is the business of government.
>
> Today's decision concedes the failure of government to make the streets and homes of certain areas reasonably safe and, in effect, transfers the governmental function of public protection to the unfortunate owners of real property in such places.[36]

Similarly, Justice LEVIN in his 1975 dissent in *Samson v Saginaw Prof Bldg, Inc*[37] sounded his concern that

---

[32] *Id.* at 151.

[33] *Id.*

[34] *MacDonald*, 464 Mich at 334-337.

[35] *Johnston*, 387 Mich 569.

[36] *Id.* at 576.

[37] *Samson v Saginaw Prof Bldg, Inc*, 393 Mich 393, 421; 224 NW2d 843 (1975) (LEVIN, J., dissenting).

imposing certain duties on landlords to protect their tenants would discourage landlords from renting because of an inability to predict potential criminal activity. He stated that

> "[e]veryone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.
>
> "The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. Whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."[38]

### 2. *WILLIAMS*: NO DUTY TO PROVIDE SECURITY PERSONNEL

Subsequent decisions have picked up on these themes, thus narrowing the window of premises possessors' liability for the criminal acts of others. In *Williams v Cunningham Drug Stores, Inc*, the Michigan Supreme Court faced a question of first impression regarding whether a storeowner must provide armed, visible security guards to protect customers from the criminal acts of third parties.[39] Pointing out that a premises possessor's duty is not absolute, such that it does not make a possessor of land an insurer of the safety of invitees, the Court declined to

---

[38] *Id.* at 420, quoting *Goldberg v Housing Auth of Newark*, 38 NJ 578, 583; 186 A2d 291 (1962).

[39] *Williams*, 429 Mich at 497.

extend a merchant's duty to exercise reasonable care to the extent requested by the plaintiff-invitees.[40] The Court stated:

> The duty advanced by plaintiffs is essentially a duty to provide police protection. That duty, however, is vested in the government by constitution and statute. . . . [N]either the Legislature nor the constitution has established a policy requiring that the responsibility to provide police protection be extended to commercial businesses.

> \* \* \*

> [I]mposing the duty advanced by plaintiffs is against the public interest. The inability of government and law enforcement officials to prevent criminal attacks does not justify transferring the responsibility to a business owner . . . . To shift the duty of police protection from the government to the private sector would amount to advocating that members of the public resort to self-help. Such a proposition contravenes public policy.[41]

Thus, the Court made clear that despite the duty that merchants owe to protect their invitees, this duty is not so broad as to require merchants to step into the role of serving as a law enforcement equivalent.

### 3. *SCOTT*: NO DUTY TO PREVENT CRIME

In a later case, the Supreme Court held that even when a merchant *chooses* to provide security to its patrons there is no increased liability for failing to actually prevent crime. In *Scott v Harper Recreation, Inc*,[42] the plaintiff, who was shot while walking to his car in a fenced, lighted parking lot owned by Harper

---

[40] *Id.* at 500-501.

[41] *Id.* at 501-504.

[42] *Scott v Harper Recreation, Inc*, 444 Mich 441, 442; 506 NW2d 857 (1993).

Recreation, Inc., sued on the basis of a representation that Harper provided "Free Ample Lighted Security Parking." On the night of the shooting security guards were also present.[43] The plaintiff alleged that Harper had failed to fulfill its voluntarily assumed duty of protection.[44] The Court observed that the plaintiff was essentially seeking to avoid the rule in *Williams*.[45] In rejecting the plaintiff's argument and reversing this Court's decision to the contrary, the Court stated:

> Common sense is required in approaching a case like this. A promise to take specific steps to reduce danger is a promise to do just that—not a promise to eliminate the danger. Manufacturers of safety equipment, for instance, normally promise, expressly or by implication, that the danger of injury will be *reduced*—rarely, if ever, do they promise that all danger of injury will be eliminated. Likewise, neither this defendant's advertising nor the measures it put in place constituted a guarantee of the plaintiff's personal safety.
>
> \* \* \*
>
> We reject the notion that a merchant who makes property visibly safer has thereby "increased the risk of harm" by causing patrons to be less anxious. In 1988, we held in *Williams* that a merchant ordinarily has no obligation to provide security guards or to protect customers against crimes committed by third persons. Today, we decline to adopt a theory of law under which a merchant would be effectively obliged *not* to take such measures.[46]

The *Scott* Court stated its agreement with *Tame v A L*

---

[43] *Id.* at 443.

[44] *Id.* at 444.

[45] *Id.* at 448.

[46] *Id.* at 450-451. The Court also noted that "providing a measure of security does not oblige a merchant to continue the practice." *Id.* at 451 n 14, citing *Lee v Borman's, Inc*, 188 Mich App 665; 470 NW2d 653 (1991); *Theis v Abduloor*, 174 Mich App 247; 435 NW2d 440 (1988).

*Damman Co,*[47] in which this Court

> "decline[d] to adopt a policy that imposes liability on a merchant who, in a good faith effort to deter crime, fails to prevent all criminal activity on its premises." It said that "[s]uch a policy would penalize merchants who provide some measure of protection, as opposed to merchants who take no such measures."[48]

The *Scott* Court concluded that "the rule of *Williams* remains in force, even where a merchant voluntarily takes safety precautions."[49] "Suit may not be main-

---

[47] *Tame v A L Damman Co,* 177 Mich App 453; 442 NW2d 679 (1989).

[48] *Scott,* 444 Mich at 451-452, quoting *Tame,* 177 Mich App at 457.

[49] *Scott,* 444 Mich at 452. We note that in so ruling, the Supreme Court rejected the continued validity of this Court's decisions in *Scott v Harper Recreation, Inc,* 192 Mich App 137, 142; 480 NW2d 270 (1991), rev'd 444 Mich 441 (1993), and *Rhodes v United Jewish Charities of Detroit,* 184 Mich App 740, 743; 459 NW2d 44 (1990).

In *Scott,* 192 Mich App at 142, this Court stated that because the defendant-merchant provided secure parking "and allegedly advertised this fact in order to attract patrons, it voluntarily assumed the duty to provide security." However, as noted, the Supreme Court in *Scott,* 444 Mich at 452, reversed this Court's decision. And in *Rhodes,* 184 Mich App at 743, this Court stated that when the defendant-merchant "voluntarily assumed the duty of providing police protection in the form of guards . . . , it became incumbent upon them to provide that protection in a non-negligent manner." But in *Scott,* 444 Mich at 452, the Supreme Court rejected that holding, expressly stating that "[t]o the extent that *Rhodes* implies that an agreement to provide security is an actionable warranty that the guarded area will be safe from all criminal activity, it is inconsistent with Michigan law."

We also note that the Supreme Court in *Scott,* 444 Mich at 452 n 15, declined to discuss *Holland v Liedel,* 197 Mich App 60, 64-65; 494 NW2d 772 (1992), in which this Court stated that "although defendant, generally, may have had no duty to provide parking lot security guards for the tenants of the apartment complex, if [defendant] voluntarily assumed the duty to provide security, a cause of action could exist if [defendant] was negligent in the discharge of this voluntarily assumed duty" because *Holland* dealt with the area of landlord-tenant law. Indeed, similarly, in *Holland* this Court declined to decide whether *Williams* applied in a landlord-tenant case. *Id.* at 63.

tained on the theory that the safety measures are less effective than they could or should have been."[50]

### 4. *MASON*: ADDING A FORESEEABILITY REQUIREMENT

The Supreme Court revisited the issue of whether merchants have a common-law duty to protect their patrons from the criminal acts of third parties in *Mason v Royal Dequindre, Inc.*[51] The Court noted that in a previous decision, *Manuel v Weitzman*,[52] it had recognized that merchants may have a common-law duty to protect their patrons from the criminal acts of other patrons.[53] It then concluded that *Williams* and *Scott* did not overrule the law established in *Manuel.*[54] It reasoned that *"Williams* and *Scott* involved random un-

---

[50] *Scott,* 444 Mich at 452; see also *Krass v Tri-County Security, Inc,* 233 Mich App 661, 684; 593 NW2d 578 (1999) ("As did the Court in *Scott,* we hold that a merchant, and the security company it hires, who voluntarily take safety precautions related to the general threat of crime cannot be sued on the theory that the safety precautions were less effective than they could or should have been."); *Abner v Oakland Mall, Ltd,* 209 Mich App 490, 493; 531 NW2d 726 (1995) (holding that "[t]he Supreme Court's decision in *Scott* clearly precludes recovery" when "[t]he essence of plaintiff's claims is that the safety measures voluntarily undertaken by defendants were less effective than they could or should have been").

[51] *Mason v Royal Dequindre, Inc,* 455 Mich 391, 393; 566 NW2d 199 (1997).

[52] *Manuel v Weitzman,* 386 Mich 157, 163-166; 191 NW2d 474 (1971). In *Manuel,* the Court stated:

> "As invitor the defendant owed the duty to its customers and patrons, including the plaintiff, of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, *known to it or that should have been known,* that might result in injury." [*Id.* at 163, quoting *Torma v Montgomery Ward & Co,* 336 Mich 468, 476; 58 NW2d 149 (1953) (emphasis added).]

[53] *Mason,* 455 Mich at 399-400.

[54] *Id.* at 401.

foreseeable assaults on an invitee by third parties. The plaintiffs were not readily identifiable as foreseeably endangered. The merchants had had no previous contact with the assailants and could not have determined that the plaintiffs were in danger."[55]

With this distinction in mind, the Court held that merchants can be liable for failing to take reasonable measures to protect their invitees from foreseeable harm caused by the criminal acts of third parties.[56] "[I]n order for a special-relationship duty to be imposed on a defendant, the invitee must be 'readily identifiable as [being] foreseeably endangered.' 'Readily' is defined as 'promptly; quickly; easily.' "[57]

More specifically, the Court in *Mason* concluded that a bar owner had no duty to take reasonable measures to protect one of its patrons from an unforeseeable attack by another patron.[58] And in *Goodman v Fortner*, the companion case decided with *Mason*, the Court found that a bar owner did have a duty to take reasonable measures to protect one of the bar's patrons from an attack by another patron when the bar's bouncers were on notice that Goodman was in danger. Goodman had requested that the bouncers call the police, and the harm was foreseeable, particularly since two previous shootings had occurred in the bar's parking lot not long before the shooting of the patron.[59] The Court specifically noted that the bouncers failed to call the police when requested by the patron.[60] Thus, the *Mason* Court further stated that, while under *Williams* and *Scott*, a merchant

[55] *Id.* at 401-402.

[56] *Id.* at 393, 403-404.

[57] *Id.* at 398 (citations omitted).

[58] *Id.* at 403-404.

[59] *Id.* at 404-405.

[60] *Id.* at 405.

does not have a duty to protect its patrons from or prevent *unforeseeable* criminal acts, a merchant does have "a duty to take reasonable measures to protect" its patrons when the harm is foreseeable.[61]

### 5. *MacDONALD*: CLARIFYING AND NARROWING THE DUTY TO RESPOND AND FORESEEABILITY REQUIREMENTS

The Supreme Court took yet another hard look at the liability of merchants for the criminal acts of third parties in *MacDonald*.[62] The combined cases involved sod-throwing incidents in 1994 and 1995 at Pine Knob Music Theater in which the plaintiffs suffered injuries.[63] The Court first acknowledged that in *Mason* it had held that a merchant has a "duty to respond reasonably to situations occurring on the premises that pose a risk of imminent and foreseeable harm to identifiable invitees."[64] However, the Court narrowed the scope of *Mason*, concluding that a merchant's duty to respond reasonably is limited to reasonably expediting the involvement of the police when a situation presently occurring on the premises poses a risk of imminent and foreseeable harm to identifiable invitees.[65] And in so holding, the Court further reaffirmed that, consistent with *Williams* and *Scott*, "merchants are not required to provide security personnel or otherwise resort to self-help in order to deter or quell such occurrences."[66]

On the issue of foreseeability, the Court disavowed its reasoning in the *Goodman* companion case to *Mason*: "To the extent that . . . we relied upon evidence of

---

[61] *Id.* at 403-405.

[62] *MacDonald*, 464 Mich 322.

[63] *Id.* at 325.

[64] *Id.* at 325-326.

[65] *Id.* at 326, 335, 338.

[66] *Id.* at 326.

previous shootings at the bar in assessing whether a reasonable jury could find that the *Goodman* plaintiff's injury was foreseeable, we now disavow that analysis as being flatly inconsistent with *Williams* and *Scott.*"[67] The Court explained, "Subjecting a merchant to liability solely on the basis of a foreseeability analysis is misbegotten" because "criminal activity is irrational and unpredictable, [and] it is in this sense invariably foreseeable everywhere."[68] "It is only a present situation on the premises, not any past incidents, that creates a duty to respond."[69] "[T]here is no duty to otherwise anticipate and prevent the criminal acts of third parties."[70]

The Court then made its basic holding explicit. It stated that the duty to respond requires *only* that a merchant make reasonable efforts to contact the police.[71] Citing *Williams*, but echoing Justice BRENNAN, the Court stated that the duty to provide police protection is vested in the government and then articulated the public policy reasons for its decision:

> To require a merchant to do more than take reasonable efforts to expedite the involvement of the police, would essentially result in the duty to provide police protection, a concept that was rejected in *Williams*. Merchants do not have effective control over situations involving spontaneous and sudden incidents of criminal activity. On the contrary, control is precisely what has been lost in such a situation. Thus, to impose an obligation on the merchant to do more than take reasonable efforts to contact the police is at odds with the public policy principles of *Williams*.[72]

---

[67] *Id.* at 334-335.

[68] *Id.* at 335.

[69] *Id.*

[70] *Id.* at 326.

[71] *Id.* at 336.

[72] *Id.* at 337.

Thus, at least in the merchant context, the Court has adopted the basic principle that Justice BRENNAN articulated in his dissent in *Johnston*: public safety is the business of the government.[73] And picking up in part the principle that Justice LEVIN articulated in his dissent in *Samson*,[74] it is only the present situation on the premises, not any past incidents, that creates a duty to respond by calling the police. Consequently, under the holding of *MacDonald*, as a matter of law, the *only* obligation that a merchant has when confronted with criminal acts of third parties presently occurring on that merchant's premises is to make reasonable efforts to contact the police.[75]

### D. RECONCILING THE DUTIES OF MERCHANTS AND LANDLORDS

In reconciling the preceding decisions, we must address a critical question: Does the *Williams/Scott/Mason/MacDonald* line of cases—which deal, respectively, with the owners of a drug store, a nightclub, two bars, and a large entertainment venue—even apply to an apartment complex?

To our knowledge, this is an issue of first impression.[76] Notably, in *Scott* the Supreme Court referred to

---

[73] *Johnston,* 387 Mich at 576.

[74] *Samson,* 393 Mich at 421.

[75] See also *Jackson v White Castle Sys, Inc,* 205 Mich App 137, 142; 517 NW2d 286 (1994) (rejecting the plaintiffs' claim that the defendant failed to protect its patrons from criminal conduct simply because incidents had occurred near the premises in the past, but stating that the plaintiff stated a claim upon which relief could be granted by alleging, in part, that the defendant failed to notify the police when it knew or should have known that its patrons were in peril); *Mills v White Castle Sys, Inc,* 167 Mich App 202; 421 NW2d 631 (1988) (reversing the grant of summary disposition in the defendant's favor when the defendant-merchant was informed of ongoing criminal activity and was asked, but refused, to summon the police).

[76] Our research reveals only one prior case on point. In a 2005 unpublished decision, a panel of this Court assumed, but failed to address

*Holland v Liedel* (a case involving a tenant who was assaulted in the parking lot of her apartment building), but specifically limited the principles it enunciated in *Scott*, stating, "We reserve our opinion regarding the application, in the case of landlord-tenant law, of the principles discussed in the present case."[77]

Because this issue involves the propriety of the trial court's decision to dismiss Bailey's claims under MCR 2.116(C)(8), we limit our analysis to a discussion of the basic facts that Bailey set out in his pleadings. We express no opinion about whether Evergreen or Radney might be able to show—through evidentiary submissions—that one or the other was not the premises possessor for purposes of premises liability.

In his second amended complaint, Bailey alleged that Green informed Baker and Campbell that Schaaf had a gun and was threatening to shoot people. Green even pointed at Schaaf, who was visible to Baker and Campbell along with the people in Schaaf's vicinity, which included Bailey. Bailey further alleged that Baker and Campbell did nothing in response. Finally, Bailey alleged that Baker and Campbell were, at all relevant times, acting within the scope of their employment or agency with Evergreen and Radney. On the basis of

specifically, that *MacDonald* applies in the landlord/tenant context. In *Loper v Doe*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2005 (Docket No. 252675), pp 3-4, a panel of this Court, simply stated:

> "The duty [to protect] exists only when the landlord created a dangerous condition that enhances the likelihood of exposure to criminal assaults." [*Stanley*, 203 Mich App] at 150. While this duty includes taking reasonable measures in response to an ongoing situation that is taking place on the premises, it does not include an obligation to otherwise anticipate the criminal acts of third parties. *MacDonald*, [464 Mich] at 338.

[77] *Scott*, 444 Mich at 452 n 15.

these alleged facts, Bailey claimed that Evergreen and Radney breached their duty of care to him as the guest of an Evergreen tenant. Bailey's claim implicated a landlord's general duty to take reasonable steps to protect his or her invitees from criminal acts within its common areas. But it also arguably implicated a merchant's duty to involve the police when the criminal acts of a third party endanger a readily identifiable invitee. We disagree that the former applies, but adopt the latter as applying under the circumstances.

Bailey alleged that Schaaf was "on the premises in a common outdoor area" threatening to shoot someone. Thus, this case clearly does not involve a condition *on the land* that placed Bailey at a heightened risk of harm at the hands of third parties. As such, to the extent that Bailey alleged that Evergreen and Radney had a general duty to protect him from the criminal acts of third-parties simply because this outdoor common area was on the premises *as a condition on the land*, he necessarily failed to state a claim. A premises possessor has no such duty.[78] Further, although Evergreen voluntarily provided security guards, Evergreen cannot be liable for voluntarily undertaking additional safety precautions that ultimately fail to prevent criminal activity on its premises.[79]

Turning to a merchant's duty to involve the police, we believe that the limited duty that *MacDonald* imposes on merchants must necessarily apply to landlords in light of a landlord's closer relationship to its tenants and their guests. As *Williams* noted, "[A] landlord has more control in his relationship with his tenants than does a merchant in his relationship with his invitees."[80]

---

[78] *Stanley*, 203 Mich App at 150-151.

[79] See *Scott*, 444 Mich at 452.

[80] *Williams*, 429 Mich at 502 n 17. The Court in *Williams* further explained:

If a merchant—with lesser ability or responsibility to control or protect its invitees than a landlord—is nevertheless required to take reasonable efforts to contact the police in response to a situation presently occurring on the premises that poses an imminent risk of harm to identifiable invitees, then surely it is logical to hold a landlord, who is in a relationship of higher control, to the same standard.

Thus, extending the *MacDonald* principles, Evergreen and Radney as premises proprietors, clearly had a duty to "respond[] reasonably to situations occurring on the premises," which included a duty to call the police when required.[81] Although Baker and Campbell were not employees of Evergreen or Radney, Bailey did allege that Baker and Campbell were agents of Evergreen or Radney for purposes of responding to safety issues. If Baker and Campbell were serving as agents of Evergreen and Radney,[82] once Green identified a criminal threat to an identifiable class of invitees, Baker and Campbell had a duty to involve the police on behalf of

---

Should a dangerous condition exist in the common areas of a building which tenants must necessarily use, the tenants can voice their complaints to the landlord. Thus, in *Samson v Saginaw Professional Building, Inc*, 393 Mich 393, 408-411; 224 NW2d 843 (1975), we upheld a landlord's duty to investigate and take available preventive measures when informed by his tenants that a possible dangerous condition exists in the common areas of the building, noting that the landlord's duty may be slight. The relationship between a merchant and invitee, however, is distinguishable because the merchant does not have the same degree of control. When the dangerous condition to be guarded against is crime in the surrounding neighborhood, as it is in the present case, the merchant may be the target as often as his invitees. Therefore, there is little the merchant can do to remedy the situation, short of closing his business. [*Id.*]

[81] *MacDonald*, 464 Mich at 335-336.

[82] We note that Green testified at her deposition that management had instructed the residents to call security to report any crimes.

Evergreen and Radney. Reading Bailey's allegations as a whole and taking them as true,[83] we conclude that Bailey stated a claim against Evergreen and Radney premised on the failure of their agents to respond appropriately to criminal activities on their principal's property.

In sum, we conclude that the trial court did not err to the extent that it dismissed Bailey's claims premised on a duty of Evergreen or Radney to provide security or otherwise make the premises safe from criminal activity. But applying *MacDonald*, we conclude that the trial court erred when it determined that Bailey had failed to state a claim against Evergreen and Radney when they did not respond properly—through their agents—to the imminent threat that Schaaf posed to lawful invitees. Evergreen or Radney had the duty to call the police once they had knowledge of an ongoing emergency that posed a foreseeable risk of imminent harm to an identifiable invitee or class of invitees.[84]

### E. HI-TECH'S DUTY

The court, however, did not err when it dismissed Bailey's negligence claims against Hi-Tech because Bailey had failed to identify a duty that was separate and distinct from Hi-Tech's duties under its contract with Evergreen.[85] Hi-Tech had no common-law duty to prevent Schaaf from hurting Bailey or otherwise to take any steps to aid Bailey. Rather, Hi-Tech's duties were created by the terms of the contract. A plaintiff cannot

---

[83] See *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

[84] *MacDonald*, 464 Mich at 337-339.

[85] See *Fultz v Union-Commerce Assoc*, 470 Mich 460, 461-462; 683 NW2d 587 (2004). Bailey also argues that *Fultz* was wrongly decided. However, this Court is bound by *Fultz* and lacks the authority to overrule it. *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006).

rely on a duty imposed solely under a contract to which he is not a party or an intended beneficiary in order to establish a claim for negligence. Therefore, the trial court properly dismissed Bailey's negligence claims against Hi-Tech.

### F. CONCLUSION

In summary, we conclude that the trial court erred when it concluded that Bailey had failed to state a claim against Evergreen and Radney and dismissed that claim. A premises possessor has a duty to take reasonable measures in response to an ongoing situation that is occurring on the premises, which means calling the police when circumstances require. But because public safety is the business of the government, calling the police is the landlord's *only* duty under such circumstances. The trial court did not err when it dismissed Bailey's remaining claims.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Having considered the issues and results on appeal, we order that none of the parties may tax costs.[86]

BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ., concurred.

---

[86] See MCR 7.219(A).