RADTKE v MILLER, CANFIELD, PADDOCK & STONE

Docket No. 103541. Decided August 6, 1996. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of grant-
ing leave, reversed the decision of the Court of Appeals and
reinstated the judgment of the circuit court.

Jerald L. Radtke entered negotiations with a partnership named
Genterco to purchase certain real property. Genterco was given a
deposit of $20,000. When negotiations stalled, Genterco presented
Mr. Radtke with an amendment to the sales contract, requiring,
inter alia, an additional $20,000 deposit to be forfeited in the event
of default. Before signing, Mr. Radtke consulted with the law firm
of Miller, Canfield, Paddock & Stone. Mr. Radtke had sought, but
did not obtain, financing for the purchase through Michigan
National Bank. When Mr. Radtke was unable to close on the
rescheduled date, Genterco sold the property to another buyer and
kept the $40,000 deposit.

Mr. Radtke sued Genterco. His complaint blamed the default on
Genterco's failure to provide requested information about a sewer
easement. Miller Canfield represented Mr. Radtke. Through differ-
ent counsel, he also sued Michigan National, alleging that the bank
had failed to process his loan application in a timely manner. In
response to a request for admission in Michigan National, he
asserted that his failure to close with Genterco was due to the
inability to obtain financing, not lack of information about the
sewer easement.

Genterco obtained summary disposition, but was required to
return the deposit. The Court of Appeals remanded the matter to
the circuit court on the basis of Mr. Radtke's admission with
respect to financing in the Michigan National case to permit
Genterco to move for relief regarding return of the deposit. On
remand, the circuit court permitted Genterco to keep half the
deposit. After remand, Miller Canfield, on Mr. Radtke's behalf,
asserted for the first time that his admission in the Michigan
National case was not admissible in the Genterco case under MCR
2.312(D)(2). The Court of Appeals declined to consider the effect
of MCR 2.312(D)(2), and concluded that Genterco was entitled to
the entire deposit.

Mr. Radtke then brought a legal malpractice action in the Wayne Circuit Court against Miller Canfield, seeking damages for its legal representation in Genterco. The court, Michael J. Callahan, J., granted summary disposition for Miller Canfield. The Court of Appeals, MICHAEL J. KELLY, P.J., and W. P. CYNAR and P. D. SCHAEFER, JJ., affirmed in part and reversed in part, agreeing with Mr. Radtke that because his statements in the Michigan National case would have been inadmissible in Genterco because of MCR 2.312(D)(2), he had submitted sufficient evidence of legal malpractice to avoid summary disposition. The case was remanded to the circuit court for further proceedings (Docket No. 162896). Miller Canfield seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court *held:*

Under MCR 2.312(D)(2), the term "admission" refers only to those statements directly within the scope of the request for admission, and does not cover statements that qualify or explain an admission, denial, or objection.

1. MCR 2.312(D)(2) provides that an admission made by a party is for the purpose of the pending action only and is not an admission for another purpose, nor may it be used against the party in another proceeding. Admissions under MCR 2.312 are judicial admissions, in contrast to evidentiary admissions under MRE 801(d)(2), and an opposing party need not introduce evidence to prove the facts admitted. Unless withdrawal is allowed by the court, a judicial admission is conclusive to the case, while an evidentiary admission is always subject to contradiction and explanation.

2. In this case, the Court of Appeals erred in not recognizing that "admission" has a distinct and narrow meaning under MCR 2.312, and thus failed to distinguish between judicial and evidentiary admissions. A party's response to a request for admission cannot be read more broadly than the request itself. Only that portion of the response that directly meets and admits the request is a judicial admission. A "denial," regardless of whether it is unequivocal or qualified, is not an admission, and giving it binding effect does not further the purpose of MCR 2.312. Likewise, qualifying or explanatory statements that embellish a matter asserted in a request for admission are evidentiary admissions that are outside subrule D(2); they are not judicial admissions and must be characterized as evidentiary admissions.

3. In the Michigan National case, the plaintiff's responses to certain requests began with the word "denied," followed by an expla-

nation. The rationale provided did not change the basic character of the responses, and did not transform them into conclusively binding judicial responses that could not be used against him in other proceedings. Likewise, his response to another request began with "admitted," followed by a paraphrase of the request and further explanation that was extraneous. Gratuitous statements that are beyond the scope of a request do not constitute conclusively binding judicial admissions under MCR 2.312, and not precluded by subrule D(2) from being used in other proceedings.

Reversed.

Justice LEVIN would grant leave to appeal.

209 Mich App 606; 532 NW2d 547 (1995) reversed.

*Kasiborski, Ronayne & Flaska, P.C.* (by *John J. Ronayne, III*), for the defendant.

PER CURIAM. We are required in this action for legal malpractice to clarify what constitutes an "admission" by a party under MCR 2.312(D)(2), so that use of the admission in other proceedings is not permitted. We hold that the term refers only to those statements directly within the scope of the request for admission, and does not cover statements that qualify or explain an admission, denial, or objection.

I

This appeal is from the partial reversal of an order of summary disposition that favored defendant Miller Canfield in an action for legal malpractice. It stems from an underlying lawsuit brought by plaintiff Radtke against a partnership called Genterco.

Mr. Radtke had entered into an agreement to purchase residential property from Genterco in July 1985. He provided a deposit of $20,000, to be retained by the seller as liquidated damages in the event of a default.

After the closing was postponed twice, Mr. Radtke asked for yet another adjournment. This time,

Genterco presented a "Second Amendment to Contract for Sale of Real Estate." In addition to rescheduling the closing date to December 2, 1985, the document increased the sale price, and required another deposit of $20,000 to be forfeited in the event of a default.

Mr. Radtke conferred about the matter with Stephen Palms, an attorney with Miller Canfield. Mr. Palms advised that under the terms of the sales agreement and Genterco's proposed amendment, Mr. Radtke would lose his entire deposit of $40,000 if he did not close on time. The two also discussed Mr. Radtke's concern about a provision in the amendment that indicated satisfaction with the marketability of title. Mr. Radtke was not certain about the location of a sewer easement, which was material to his plans to develop the property. Counsel addressed the easement issue in a letter to Genterco, but did not alter the amendment itself before Mr. Radtke signed it.

Mr. Radtke was not prepared to close on the rescheduled date of December 2, 1985, and Genterco sold the property to another buyer. Genterco kept the $40,000 deposit.

Alleging breach of contract, fraud, and interference with economic relations, Miller Canfield filed suit against Genterco on Mr. Radtke's behalf later in December 1985. The complaint blamed Mr. Radtke's default on Genterco's failure to provide the requested information about the sewer easement.

Through different counsel, Mr. Radtke also filed suit in November 1987 against Michigan National Bank (MNB), from whom he had sought financing for the Genterco transaction. He alleged that the bank had failed to process his loan application in a timely

manner. In response to MNB's July 1988 request for admission under MCR 2.312, Mr. Radtke asserted in September 1988 that his failure to close on the Genterco deal was due to his inability to obtain financing, not lack of information about the sewer easement. The latter was not an insurmountable obstacle, he stated.

Meantime, in June 1988, Genterco obtained summary disposition in the action against it, but failed to persuade the trial court that it was entitled to Mr. Radtke's $40,000 deposit. Citing equitable principles, the court ordered Genterco to return the deposit.

Both sides appealed in *Genterco*. On the basis of newly discovered evidence, i.e., the responses Mr. Radtke had since filed to the request for admission in the action against MNB, the Court · of Appeals remanded the matter to the circuit court so that Genterco could move for relief from the June 1988 order. The Court of Appeals retained jurisdiction.[1]

On remand, the circuit court concluded that Genterco was entitled to keep half the $40,000 deposit. The court cited the newly discovered evidence and equitable principles.

When the case returned to the Court of Appeals, Miller Canfield argued on Mr. Radtke's behalf, for the first time, that his statements in the MNB case were not admissible in the action against Genterco because of MCR 2.312(D)(2). That court rule provides that an admission made in response to a request for admission is for the purpose of the pending action only, and may not be used against the maker in other pro-

---

[1] Unpublished order of the Court of Appeals, entered February 28, 1989 (Docket No. 109712).

ceedings. Counsel said that the failure to raise the issue previously was inadvertent, and that appellate review was necessary to avoid a manifest injustice.

The Court of Appeals declined to consider the effect of MCR 2.312(D)(2), nonetheless, because of the preservation problem. The Court then concluded, partly on the basis of Mr. Radtke's statements in the MNB case, that Genterco was entitled to the entire $40,000 deposit.[2]

Mr. Radtke subsequently initiated the instant lawsuit, advancing several theories of legal malpractice with respect to Miller Canfield's representation of him in the negotiations with and action against Genterco. Miller Canfield eventually obtained summary disposition under MCR 2.116(C)(10) with respect to all claims, including the claim regarding its failure to preserve the issue of MCR 2.312(D)(2).

The Court of Appeals partly affirmed and partly reversed, and denied rehearing. The Court agreed with Mr. Radtke that his statements in the MNB case would have been inadmissible in *Genterco* because of MCR 2.312(D)(2), and that he thus had submitted sufficient evidence of legal malpractice to avoid summary disposition under MCR 2.116(C)(10). The panel remanded the matter to the circuit court for further proceedings. As to all other theories, the Court of Appeals affirmed summary disposition for Miller Canfield. 209 Mich App 606; 532 NW2d 547 (1995).[3]

Miller Canfield seeks leave to appeal.

---

[2] Unpublished opinion per curiam of the Court of Appeals, issued August 1, 1990 (Docket Nos. 109712, 109764).

[3] Reh den unpublished order of the Court of Appeals, entered June 12, 1995 (Docket No. 162896).

II

This appeal concerns MCR 2.312, which governs requests for admission in civil cases. It also concerns the distinction between "judicial" admissions and "evidentiary" admissions.

The court rule allows requests for admission within the time for completion of discovery. Under subrule B, a party served with such a request has several options. The party may concede the matter either by express admission or by doing nothing, in which event the matter is deemed admitted after a specified period.[4] The party also may deny the matter, in whole or in part, explain why it neither can admit nor deny the matter, or object to the request.[5]

Subrule D(1) states that a matter "admitted" under the rule is conclusively established unless the court permits withdrawal or amendment. Subrule D(2), the focus of this appeal, explains the reach of such an admission:

> An admission made by a party under this rule is for the purpose of the pending action only and is not an admission for another purpose, nor may it be used against the party in another proceeding.

MCR 2.312 is modeled after FR Civ P 36, and serves two vital purposes:

---

[4] MCR 2.312 does not mention an express admission. Neither does its federal counterpart, FR Civ P 36. It is understood that such an admission is preferable to an implied admission, however. See 4A Moore, Federal Practice (2d ed), ¶ 36.05[4], p 36-53, n 1, citing *United States v Schine Chain Theatres, Inc*, 4 FRD 109 (WD NY, 1944).

[5] There are other options, too, such as moving for an extension of time or a protective order, but they are beyond the scope of this discussion.

> Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be. [Advisory Committee note of 1970 to amend rule 36.]

By encouraging admissions, the goal of subrule D(2) is thus the same as the goal of the rule itself, i.e., to expedite the pending action.

Admissions under MCR 2.312 are "judicial" admissions. 2 McCormick, Evidence (4th ed), § 254, p 142, n 11. In contrast to "evidentiary" admissions, i.e., admissions of a party opponent under MRE 801(d)(2), judicial admissions are not really "evidence" at all:

> Rather, they are formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. [*Id.*, p 142.]

In essence, admissions under MCR 2.312 are more a matter of civil procedure than of evidence law. The party who makes such an admission "has conclusively (or 'judicially') admitted such facts . . . and the opposing side need not introduce evidence to prove the facts."[6] 2 Jones, Evidence (6th ed), § 13C:14, p 310 (Nov 1995 supp).

A judicial admission differs dramatically from an evidentiary admission with respect to the effect of the admission. Although both judicial and evidentiary

---

[6] A request for admission is not a typical discovery device, however, because the purpose "is not to discover facts but rather to establish some of the material facts in a case without the necessity of formal proof at trial . . . so that issues which are disputed might be clearly and succinctly presented to the trier of facts." 23 Am Jur 2d, Depositions and Discovery, § 314, p 613.

admissions are subject to all pertinent objections to admissibility that might be interposed at trial (4A Moore, Federal Practice [2d ed], ¶ 36.08, p 36-82, and Martin, Dean & Webster, Michigan Court Rules Practice [3d ed], R 2.312, p 357[7]),

> the judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case, whereas the evidentiary admission is not conclusive but is always subject to contradiction or explanation. [McCormick, p 142.]

III

In Mr. Radtke's action against Michigan National Bank, MNB requested in writing that he make numerous admissions under MCR 2.312. Four of the responses are of particular relevance to the instant appeal:

> Request 8. The sewer easement located on the 70 Lakeshore Drive property runs parallel to Lakeshore Drive.
>
> Response 8. Denied for the reason that allegations therein are not true. The sewer easement for which I expressed concern at 70 Lakeshore Drive runs through the property. I have learned that my concerns regarding the easement which ran through the property were unfounded.

---

[7] The authors observe that conclusively binding admissions by a party under MCR 2.312 are insignificant unless they are offered as evidence at trial or in support of a motion for summary disposition. Whatever approach is used, the admissions must be brought before the court before the close of proofs:

> If sought to be introduced at trial, admissions are subject to all pertinent objections to admissibility as could be raised to any other similar evidence proffered. It must be remembered that although rule 2.302(B) has removed any "admissibility" requirement from the discovery rules, the rule has not also made any matter discoverable automatically "admissible." In most instances, however, MRE 801(d)(2) would grant broad use of such admissions.

*As of December 2, 1985* [the rescheduled closing date], *my expressed concerns over the sewer easement were used in an effort to secure more time for Michigan National Bank of Detroit. While there was an active sewer which runs under Lakeshore Drive, this active sewer was known to me and of no concern to me.* [Emphasis added.]

Request 11. Plaintiff's sole reason for not closing on the property located at 70 Lakeshore Drive was that he had not received all of the documents that he felt he was entitled to receive from the sellers of the property prior to the closing.

Response 11. Denied for the reason that allegations therein are not true. *I did not close on the 70 Lakeshore Drive property on December 2, 1985 because I did not have the funds to do so. Had the necessary funds or a commitment been provided by Michigan National Bank of Detroit on or before December 2, 1985, my concern for the easement could have been satisfied. As of December 2, 1985, I was using the request for further documents that I felt I was entitled to receive from the sellers prior to the closing, in an effort to secure more time to obtain the necessary funds.* [Emphasis added.]

Request 12. Plaintiff did not close the transaction for the purchase of the 70 Lakeshore Drive property on December 2, 1985 because he had not received a survey from the sellers which would have shown him where the sewer easement on the property was located.

Response 12. Denied for the reason that allegations therein are not true. Please refer to answer 11, above. *I did not consider the absence of a survey report to be an insurmountable obstacle to the closing on December 2, 1985 for the 70 Lakeshore Drive property.* [Emphasis added.]

Request 13. Plaintiff never had actual knowledge of the location of the sewer easement on the 70 Lakeshore Drive property prior to 8:00 P.M. on December 2, 1985.

Response 13. Admitted, that I did not have "actual knowledge" of the location of the sewer easement on Lakeshore Drive, but I did know of its existence before December 2, 1985. *I did not consider this to be an insurmountable obstacle to closing at 8:00 P.M. on December 2, 1985.* [Emphasis added.]

As we observed, a party served with a request for admission may concede the matter by express admission or silence, deny the matter in whole or in part, explain why it neither can admit nor deny the matter, or object to the request. Denials and objections are subject to the following provisions of MCR 2.312(B):

(2) The answer must specifically deny the matter or state in detail the reasons why the answering party cannot truthfully admit or deny it. A denial must fairly meet the substance of the request, and when good faith requires that a party qualify an answer or deny only part of the matter of which an admission is requested, the party must specify the parts that are admitted and denied.

(3) An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that he or she has made reasonable inquiry and that the information known or readily obtainable is insufficient to enable the party to admit or deny.

(4) If an objection is made, the reasons must be stated. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request. The party may, subject to the provisions of MCR 2.313(C),[8] deny the matter or state reasons why he or she cannot admit or deny it.

---

[8] MCR 2.313(C) provides:

Expenses on Failure to Admit. If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The court shall enter the order unless it finds that

(1) the request was held objectionable pursuant to MCR 2.312,

(2) the admission sought was of no substantial importance,

(3) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or

(4) there was other good reason for the failure to admit.

IV

As noted by the Court of Appeals, a plaintiff who alleges legal malpractice must prove professional negligence, i.e., that counsel failed to exercise reasonable skill, care, discretion, and judgment in the conduct and management of the underlying case. The plaintiff also must establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff.

Here, plaintiff Radtke blames his appellate failure in *Genterco* on Miller Canfield's failure to timely assert the applicability of MCR 2.312(D)(2). In other words, Mr. Radtke contends that he would have prevailed on appeal in *Genterco* if his responses to the request for admission in the MNB case had not been used against him in *Genterco*.

The Court of Appeals acknowledged that Mr. Radtke's malpractice claim would fail for lack of causation if his statements in the MNB case were admissible in *Genterco*, i.e., if MCR 2.312(D)(2) were not applicable. The panel concluded, however, that the court rule did apply, and that the MNB statements were not admissible in *Genterco*:

> The purpose of MCR 2.312 is " 'to limit areas of controversy and save time, energy, and expense which otherwise would be spent in proffering proof of matters properly subject to admission.' " . . . [T]he rule contemplates detailed responses to help narrow the issues. In light of that purpose, there is no reason to deem a detailed denial of a statement different from an admission of a statement for purposes of determining whether the party should be bound by that statement in other litigation. We do not believe that a fair interpretation would penalize a party for giving clear answers to requests for admissions because the party's

statements were made as part of a "denial" rather than an
"admission." [209 Mich 616.]

V

We agree with Miller Canfield that the Court of
Appeals erred in not recognizing that the term
"admission" has a distinct and narrow meaning in
MCR 2.312. By assigning the term a casual definition,
the panel failed to distinguish between "judicial" and
"evidentiary" admissions. Such an approach is not
consistent with the purpose of the rule, as discussed
earlier in this opinion.

A party's response to a request for admission can-
not be read more broadly than the request itself, for
purposes of determining what part constitutes a judi-
cial admission. Only that portion of the response that
directly meets and admits the request is a judicial
admission under MCR 2.312, so that it is conclusively
binding for the pending action and may not be used
as evidence in other proceedings.

A "denial," regardless of whether it is unequivocal
or qualified, is not an "admission," and giving it bind-
ing effect for the pending action does not further the
purpose of MCR 2.312—to limit the areas of contro-
versy and to conserve resources that otherwise would
be spent amassing proofs.[9] Likewise, qualifying or
explanatory statements that embellish upon a matter
asserted in a request for admission are evidentiary
admissions that are outside subrule D(2). Such state-
ments are not admissions of the request as stated, i.e.,

---

[9] While a party may not avoid the conclusive effect of an admission
that good faith requires by preceding an explanation with the word
"deny," we believe that the sanctions available under MCR 2.313(C) are
sufficient protection against such a potential abuse.

"judicial" admissions, and therefore must be characterized as evidentiary admissions.

The policy considerations that favor encouraging and protecting judicial admissions under MCR 2.312 do not support treating unnecessary explanations in the same manner. When a party "admits" an assertion in a request for admission, the case is expedited and valuable resources are conserved, to the extent that some issues are eliminated and others narrowed. When a party's response goes beyond the scope of the request, however, these goals are not achieved. To the contrary, such a response may needlessly complicate issues already present in the case and even create new ones. Neither are the goals underlying the court rule served by inviting parties to make questionable or false admissions, knowing that their statements cannot be used in other proceedings.

In the MNB case, plaintiff Radtke's responses to requests 8, 11, and 12 began with the word "[d]enied," followed by an explanation of why the sought-after admission was untrue. The fact that Mr. Radtke provided rationale did not change the basic character of the responses, however, and did not transform them into conclusively binding "judicial" responses that could not be used against him in other proceedings.

Likewise, although Mr. Radtke's response to request 13 began with the word "[a]dmitted," followed by a paraphrase of the request, his further explanation (including the part that was important in *Genterco*) was extraneous to the request. Gratuitous statements that are beyond the scope of a request do not constitute conclusively binding judicial admissions under MCR 2.312, and are not precluded by subrule D(2) from being used in other proceedings.

VI

The Court of Appeals found that Miller Canfield's failure to raise MCR 2.312(D)(2) in *Genterco* amounted to error so serious as to potentially constitute malpractice. The panel's reasoning depended upon its conclusion that Mr. Radtke's responses to the request for admission in the MNB case were inadmissible in *Genterco* because of MCR 2.312(D)(2).

For the reasons given, we hold that MCR 2.312(D)(2) did not preclude the admission in *Genterco* of Mr. Radtke's statements in the MNB case. We thus reverse the decision of the Court of Appeals on this point and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. I would grant leave to appeal.