YOUNG, C.J.
(dissenting). I respectfully dissent from the Court’s decision to grant defendant a new trial on his motion for relief from judgment. While I agree with the majority that collateral estoppel does not bar defendant’s claims of error, I cannot adopt the majority’s amorphous analysis on that issue and instead would simply hold that the prosecution has not satisfied the elements required to apply collateral estoppel against defendant. Moreover, in applying Strickland v Washington to the facts of this case, I do not believe defendant is entitled to relief because he has not shown that counsel’s performance was “outside the wide range of professionally competent assistance” leading to “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”[1] Thus, I would affirm the result reached by the Court of Appeals.
I. COLLATERAL ESTOPPEL
The Court of Appeals determined that the collateral estoppel doctrine barred substantive consideration of *60 many of defendant’s ineffective assistance of counsel claims.[2] While I agree with the majority that the Court of Appeals erred by applying collateral estoppel to bar many of defendant’s claims, I do not adopt the majority’s analysis to reach this conclusion. Instead of examining defendant’s interests in litigating his legal malpractice and ineffective assistance of counsel claims, I would consider the elements required to apply collateral estoppel, which lead inexorably to the conclusion that defendant is not precluded from alleging ineffective assistance of counsel in a motion for relief from judgment. Accordingly, I would decide the issue on this basis alone.
In Monat v State Farm Insurance Co, this Court articulated the elements of collateral estoppel:
Generally, for collateral estoppel to apply three elements must be satisfied: (1) “a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment”; (2) “the same parties must have had a full [and fair] opportunity to litigate the issue”; and (3) “there must be mutuality of estoppel. ”[3]
*61 In this case, the first element of collateral estoppel is not satisfied because defendant’s ineffective assistance of counsel claim was not “actually litigated and determined by a valid and final judgment” in his legal malpractice action. A party asserting legal malpractice “must establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff.”[4] However, Strickland specifically indicates that a criminal defendant may be entitled to a new trial on the basis of ineffective assistance of counsel “even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.”[5] Because a legal malpractice action requires a higher threshold of prejudice than an ineffective assistance of counsel claim, a defendant can establish ineffective assistance of counsel even if he cannot establish legal malpractice. As a result, the Court of Appeals erred by concluding that defendant’s ineffective assistance of counsel claim was “actually litigated and determined by a valid and final judgment,” and we need not even consider defendant’s interests in undertaking his legal malpractice and ineffective assistance of counsel claims as the majority does.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
Nevertheless, when examining defendant’s substantive claims, I do not believe defendant is entitled to a *62 new trial on the basis of his motion for relief from judgment.[6] The Sixth Amendment of the United States Constitution, incorporated to the states through the Fourteenth Amendment,[7] guarantees a criminal defendant “the right... to have the Assistance of Counsel for his defence.”[8] Strickland requires a defendant to “identify the acts or omissions of counsel that are . . . outside the wide range of professionally competent assistance.”[9] This review of counsel’s performance is “highly deferential,”[10] must proceed under “a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance,” and must consider whether the challenged action (or failure to act) “ ‘might be considered sound trial strategy’ ”[11] Only when a criminal defendant has shown counsel’s performance to be objectively unreasonable can we consider the effect of counsel’s performance: a criminal defendant is only entitled to a new trial if he can show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding *63 would have been different.”[12] Strickland also provides that “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.”[13]
The majority claims that counsel was ineffective because she did not conduct a preliminary examination or file for a bill of particulars to determine the nature of the charges against defendant. Counsel testified that she did not conduct a preliminary examination because she did not want to preserve the testimony of certain unfavorable witnesses. Further, while the charging documents lacked specific factual allegations beyond the offenses charged, counsel testified at defendant’s Ginther[14] hearing that she had police and Family Independence Agency reports from which she could determine the factual allegations supporting the charges against defendant. Counsel also testified that she believed the imprecision in the charging documents would confuse the trier of fact and redound to defendant’s benefit. The majority fails to consider that the decision to forgo a preliminary examination or bill of particulars can itself be a reasonable trial strategy under the circumstances of this case, when counsel had information regarding the nature of the charges from documents in her possession.
That in hindsight a strategy was not completely successful does not render it unreasonable and does not render counsel’s assistance ineffective. Strickland itself implores reviewing courts to undertake “every effort... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct *64 from counsel’s perspective at the time.”[15] In this case, when looking to what strategy counsel developed or could have developed at the time she was preparing for trial, we must consider that any strategy must account for defendant’s admissions that he touched his daughter’s genitals at least seven times — six times, he claims, to administer ointment, and once to determine the extent of the pain that his daughter complained of. As a result of these admissions, trial counsel could not prepare the defense that none of the touchings occurred. Rather, counsel had to argue that the times that defendant applied the ointment were not for a sexual purpose. Defendant vehemently denied that he ever touched the complainant’s hand to his penis, and trial counsel’s strategy with regard to that issue was to impeach the complainant’s credibility and explain that defendant put the complainant’s hand to his stomach to show her an old-world remedy to relieve stomach pain.
Both the circuit court and the Court of Appeals determined that this trial strategy was objectively reasonable, and they did not err by doing so. Nevertheless, the circuit court held that counsel was ineffective for failing to present the alternative defense that the complainant’s mother, Liliya Tetarly, fabricated the allegations. While this defense is not necessarily inconsistent with counsel’s chosen defense, counsel provided a reasonable explanation at the Ginther hearing regarding why she did not choose to present it: she was afraid that basing a defense on Tetarly’s relationship with defendant would open the door to information that would reflect badly on defendant, including details about the *65 acrimonious divorce between defendant and Tetarly.[16] The Court of Appeals correctly reversed as an abuse of discretion the circuit court’s decision to grant defendant a new trial, the sole basis for which was that counsel did not proffer a defense focusing on Tetarly’s character.
Furthermore, the circuit court abused its discretion when it granted defendant a new trial without inquiring into the potential prejudice resulting from counsel’s actions because Strickland requires a defendant to show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”[17] Even if counsel was deficient for failing to interview CARE House employees or consult with an expert about forensic interviewing techniques, the unrebutted evidence indicates that the complainant’s initial revelation was not a product of any questioning; rather, both the complainant and her mother have testified that the complainant made the revelation spontaneously. While defendant’s expert at the Ginther hearing, Dr. Katherine Okla, testified that she had concerns about the interview techniques that led to the complainant’s subsequent disclosures involving defendant’s touching of her genitals, defendant admitted that he had touched the complainant’s genitals. Thus, I cannot conclude that there is a reasonably likely probability of a different result *66 occurring but for counsel’s failure to interview CARE House employees or consult with an expert.
Moreover, while the majority argues that counsel did not adequately impeach the complainant, counsel’s cross-examination of the complainant at trial highlighted inconsistencies regarding the number of times that the complainant claimed that defendant touched her hand to his genitals. Indeed, at one point, the circuit court cut counsel off and acknowledged that the complainant could not explain the inconsistencies between her testimony and a police report.[18] The circuit court determined that three of the five charged counts of second-degree criminal sexual conduct arose out of allegations that defendant touched the complainant’s hand to his genitals, and it convicted defendant of one of those three counts. I cannot conclude that further cross-examination of complainant emphasizing any inconsistencies in the complainant’s previous statements would have resulted in a reasonably likely chance of acquittal on the single remaining count relating to the touching of defendant’s genitals given the circuit court’s statement that the complainant’s vivid description of defendant’s genitals was “not something that a child would fabricate.”
The circuit court also found defendant’s testimony about administering the medication not to be credible, “mainly because of the major inconsistency in regard to the rebuttal witness’s testimony that he was never asked to apply the ointment” and because the complainant’s “yeast infections did not occur around the time in *67 which allegedly these incidents occurred . . . Nothing in any postconviction testimony undermines Tetarly’s claim that the complainant did not suffer from yeast infections at the time of the allegations, and defendant has not offered any proof to undermine that claim. As a result, defendant has not shown a reasonably probable chance of a different outcome at trial on the charges involving defendant’s touching of the complainant’s genitals. Tetarly always maintained that she did not ask defendant to apply any medication, and she reiterated at the Ginther hearing that she never provided defendant with medication to place on the complainant’s genital area. Indeed, this testimony that defendant was not allowed to apply ointment is rendered more credible by Tetarly’s testimony that defendant poured cologne on complainant’s genital area in February 2004. This testimony went unrebutted during both the bench trial and the Ginther hearing. Moreover, the complainant’s testimony at a subsequent civil proceeding corroborates Tetarly’s testimony that only Tetarly would apply ointment for the complainant’s yeast infections and that defendant once poured cologne on the complainant’s genital area.[19]
Defendant also claims that testimony by his son, HT, would have corroborated defendant’s claim that Tetarly insisted that defendant apply the ointment to the complainant’s genital area and that, after several minutes of heated argument, he yielded to her request. Nevertheless, defendant offers no proof on this claim beyond his bald assertion that HT was actually present for the conversation that defendant described. In fact, HT was deposed during the civil litigation against *68 defendant, but he did not testify regarding this alleged conversation. Instead, HT testified that defendant often yelled at the complainant to return to her room when, at night, she would appear at his bedroom. This is consistent, however, with the complainant’s testimony at the civil trial that sometimes defendant would yell at her to return to her room, although she also testified that sometimes he would tell her to join him in his bed. The lack of an offer of proof regarding whether HT could corroborate defendant’s testimony about the ointment sharply contrasts with the situation resulting in a new trial in People v Armstrong,[20] in which the defendant offered documentary proof that contradicted specific testimony by the complainant at trial. Accordingly, I cannot say that this potential corroborative testimony is sufficiently concrete to satisfy Strickland’s prejudice requirement.[21]
III. CONCLUSION
For all these reasons, I would affirm the Court of Appeals’ ruling that defendant is not entitled to a new trial, although I would vacate its conclusion that collateral estoppel bars substantive consideration of defendant’s ineffective assistance of counsel claims. Defendant is not entitled to a new trial pursuant to his *69 motion for relief from judgment because he has not satisfied the elements of Strickland — that counsel’s performance was “outside the wide range of professionally competent assistance” leading to “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”[22]
ZAHRA, J., concurred with YOUNG, C.J.
HATHAWAY, J., did not participate because of a professional relationship with a member of a law firm involved in the matter.

 Strickland v Washington, 466 US 668, 690, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

 The Court of Appeals first concluded that the circuit court erred by granting defendant a new trial because the circuit court’s analysis was complete as a matter of law once it concluded that his counsel’s trial strategy was reasonable. Nevertheless, it went on to examine potential alternative bases for affirming the circuit court’s decision, and it ended up rejecting many of defendant’s ineffective assistance of counsel claims on the basis of collateral estoppel. Because it was sufficient to resolve defendant’s appeal on the basis of its conclusion that trial counsel’s strategy was reasonable, the Court of Appeals’ decision to apply collateral estoppel was not essential to its holding.

 Monat v State Farm Ins Co, 469 Mich 679, 682-684; 677 NW2d 843 (2004), quoting Storey v Meijer, Inc, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988) (alteration in original). Monat also held that the third element, mutuality of estoppel, is unnecessary when the party asserting estoppel claims that the opposing party is bound by a previous adverse ruling: “There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity *61 with a party, to the earlier litigation.” Monat, 469 Mich at 689 (quotation marks and citation omitted). Accordingly, because the prosecution seeks to apply collateral estoppel against defendant, Monat does not require mutuality of estoppel and the fact that the prosecutor was not a party in defendant’s legal malpractice claim does not itself bar application of collateral estoppel.

 Radtke v Miller, Canfield, Paddock & Stone, 453 Mich 413, 424; 551 NW2d 698 (1996).

 Strickland, 466 US at 694.

 Because defendant is seeking relief pursuant to subchapter 6.500 of the Michigan Court Rules, we review for an abuse of discretion the circuit court’s decision to grant this relief. See People v Osaghae (On Reconsideration), 460 Mich 529, 534; 596 NW2d 911 (1999). However, we review de novo any underlying questions of constitutional law. People v LeBlanc, 465 Mich 575, 579; 640 NW2d 246 (2002).

 Powell v Alabama, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932).

 US Const, Am VI. The Michigan Constitution also provides a right to the effective assistance of counsel, see Const 1963, art 1, § 20, although it “does not afford greater protection than federal precedent with regard to a defendant’s right to counsel when it involves a claim of ineffective assistance of counsel,” People v Pickens, 446 Mich 298, 302; 521 NW2d 797 (1994).

 Strickland, 466 US at 690.

 Id. at 689.

 Id., quoting Michel v Louisiana, 350 US 91, 101; 76 S Ct 158; 100 L Ed 83 (1955).

 Strickland, 466 US at 694.

 Id. at 691.

 See People v Ginther, 390 Mich 436; 212 NW2d 922 (1973).

 Strickland, 466 US at 689; see also People v LaVearn, 448 Mich 207, 216; 528 NW2d 721 (1995), quoting Strickland, 466 US at 689.

 The majority explains that counsel failed to investigate allegations of sexual abuse that Tetarly made in the past against defendant’s other ex-wife. However, the record below only indicates that she reported what defendant’s son (a toddler at the time) said and did. While the ex-wife was not convicted of abuse, it is not apparent from the record that these allegations are false — or intentionally false — claims of abuse that would implicate Tetarly’s general character for truthfulness.

 Strickland, 466 US at 694.

 While the majority puts much stock in potential expert testimony to impeach the complainant’s testimony, the same experts might also have bolstered her credibility by helping to explain the inconsistencies that defense counsel sought to highlight. For instance, CARE House employee Amy Allen testified at defendant’s civil trial that it is not unusual for a sexual abuse victim to give conflicting reports about the abuse.

 Although the majority observes that the complainant testified otherwise at the civil proceeding, the complainant quickly retracted that statement and reiterated that only her mother would apply the ointment.

 People v Armstrong, 490 Mich 281; 806 NW2d 676 (2011).

 In addition, to his ineffective assistance of counsel claims, defendant also claimed that newly discovered evidence requires a new trial. The lower courts correctly rejected defendant’s argument. In particular, the Court of Appeals explained that most of defendant’s claimed newly discovered evidence could have been discovered at the time of trial. In analyzing the evidence that actually constituted newly discovered evidence — the results of defendant’s polygraph examination and the complainant’s subsequent writings — the Court of Appeals correctly determined that a different result is not probable upon retrial. See People v Cress, 468 Mich 678, 692; 664 NW2d 174 (2003).

 Strickland, 466 US at 690, 694.