*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEROME TRENKAMP,

      Plaintiff-Appellee,

v

ANNE KEYSER, Individually and as Personal Representative of the ESTATE OF MELVIN KEYSER,

      Defendant-Appellant.

UNPUBLISHED
July 9, 2019

No. 342479
Saginaw Circuit Court
LC No. 14-022870-NI

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant, Anne Keyser, individually and as the personal representative of the estate of Melvin Keyser, appeals as of right a judgment entered following a jury trial in this third-party no-fault action alleging negligence and negligence per se against Melvin Keyser[1] and liability under the owner's liability statute, MCL 257.401, against Anne Keyser. We affirm.

This case arises out of a motor vehicle accident. Melvin was exiting a ramp from I-75 onto eastbound M-46 when his vehicle continued straight instead of following the curve of the exit loop. The vehicle drove through a grassy area, crossed two lanes of eastbound traffic, collided with a sign, went over a concrete divider in the roadway, and struck a vehicle driven by plaintiff in the westbound lanes of M-46. Plaintiff suffered a tear in his left rotator cuff that required surgery to repair and a fracture to the talus in his left ankle that ultimately required an ankle fusion. Plaintiff filed suit against Melvin for negligence and negligence per se, and against Anne under the owner's liability statute, MCL 257.401. The trial court took judicial notice of Anne's ownership of the vehicle and found that there was no question of fact on the issues of negligence and proximate causation. The court further ruled that, as a matter of law, plaintiff

---

[1] This case originated as an action against Melvin Keyser and Anne Keyser. The estate of Melvin Keyser later was substituted as a party for Melvin Keyser.

had suffered a serious impairment of body function. Consequently, the trial court directed a verdict in favor of plaintiff on the issue of liability. The jury awarded plaintiff damages of $350,000 for noneconomic loss from the date of the accident to the date of trial.

## I. SERIOUS IMPAIRMENT OF BODY FUNCTION

Defendant argues that the trial court erred by granting a directed verdict in plaintiff's favor on the issue of whether plaintiff sustained a serious impairment of body function because questions of fact existed with respect to the impact of the claimed impairment on plaintiff's general ability to lead his normal life. This Court reviews de novo a trial court's grant of a motion for a directed verdict. *Chouman v Home Owners Ins* Co, 293 Mich App 434, 441; 810 NW2d 88 (2011). "When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor. A directed verdict is appropriate where reasonable minds could not differ on a factual question." *Id*. (quotation marks and citations omitted). The issue of whether an injured person has suffered serious impairment of body function is a question of law for the court if the court finds either of the following: (1) there is no factual dispute concerning the nature and extent of the person's injuries, or (2) there is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. MCL 500.3135(2)(a)(*i*), (*ii*).

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). The issue in this case is whether there is a genuine issue of material fact whether plaintiff suffered a serious impairment of body function.[2] A "serious impairment of body function" is defined by statute as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The test for establishing a serious impairment of body function requires showing "(1) an objectively manifested impairment (2) of an important body function[3] that (3) that affects that specific person's general ability to lead his or her particular normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

The trial court found that there was no material factual dispute regarding the nature and extent of plaintiff's injuries and that plaintiff met the serious impairment threshold as a matter of law. The court stated in its opinion and order:

> On the contrary, the *undisputed* facts are the Plaintiff's actual injuries, the surgeries, the rehabilitation, the resultant limitations to movement, and the pain, regardless of the slight differences in degree that are part of the record. These

---

[2] The other two types of threshold injuries are not implicated here.

[3] The second prong is not contested by defendant in her brief on appeal.

circumstances resulted in Plaintiff being unable to move side to side or on uneven surfaces, climb ladders, run, jog, or hike. Plaintiff has a noticeable limp and/or dropped foot and climbing stairs is very difficult. Lastly, Plaintiff is limited in his ability to work on his farm property and hunt, which he did without limitation prior to the accident.

Given the lack of a factual dispute regarding the nature and extent of plaintiff's injuries, the trial court properly considered as a matter of law whether plaintiff suffered a serious impairment of body function. See MCL 500.3135(2)(a)(*i*), (*ii*).

With regard to the first requirement of a serious impairment of body function, there is no dispute that plaintiff suffered objectively manifested *injuries* to his shoulder and his ankle as a result of the auto accident. Defendant contends that, despite these injuries, there was a genuine dispute whether the shoulder injury constituted an objectively manifested *impairment* as contemplated by MCL 500.3135(5). In *Patrick v Turkelson*, 322 Mich App 595, 606-607; 913 NW2d 369 (2018), this Court, quoting *McCormick*, 487 Mich 196, 197, 198, defined an "objectively manifested impairment" as

> one "that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." The inquiry focuses on "whether the impairment is objectively manifested, not the injury or its symptoms." The term "impairment" means "the state of being impaired." In turn, "impaired" means the state of (1) "being weakened, diminished, or damaged" or (2) "functioning poorly or inadequately." Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested. Medical testimony is generally, but not always, required to make this showing.

Plaintiff suffered an objectively manifested impairment from the time of the injury until his rotator cuff and labrum tears in his shoulder healed following the shoulder surgery because plaintiff was quite limited in what he could do while injured. Defendant argues that plaintiff's impairment was not objectively manifested because his shoulder healed following the surgery. However, there is no temporal framework included in the definition of "objectively manifested body function." MCL 500.3135(5) simply provides that the objectively manifested impairment of a body function *must affect one's general ability to lead his or her normal life*, which is a separate inquiry under the test. De novo review of the entire record indicates that no genuine issue of material fact exists regarding whether plaintiff suffered an objectively manifested impairment as a result of the April 2012 accident.[4]

---

[4] Defendant has not challenged on appeal the trial court's finding that plaintiff suffered an objectively manifested impairment of his ankle.

With regard to the third requirement of serious impairment of body function, defendant argues that plaintiff did not show that his objectively manifested impairments affected his general ability to lead his normal life. "[A]n impairment to an important body function affects a person's general ability to lead a normal life if it has 'an influence on some of the person's capacity to live in his or her normal manner of living.' " *Patrick*, 322 Mich App at 607, quoting *McCormick*, 487 Mich at 215. Because no two people are alike, "the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is." *McCormick*, 487 Mich at 202-203. In other words, the inquiry is subjective. *Patrick*, 322 Mich App at 607. In order to show that the impaired person's ability to lead his or her normal life has been affected, a comparison is made between his or her life before and after the injury. *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011). "[T]he statute merely requires that a person's general ability to lead his or her normal life has been affected, not destroyed." *McCormick*, 487 Mich at 202. Therefore, "courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or life element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. Additionally, "the statute only requires that some of the person's ability to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. Lastly, as the Court explained in *McCormick*, "[w]hile the Legislature required that a 'serious disfigurement' be 'permanent,' it did not impose the same restriction on a 'serious impairment of body function.' " *Id*. at 203, quoting MCL 500.3135(1). Thus, there is no "express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Id*.

Here, there is no material factual dispute with respect to plaintiff's lifestyle both away from work and at work before the accident. Plaintiff enjoyed an active lifestyle away from work before the injury, including water skiing, snow skiing, hiking, hunting, running and jogging, and physical activities related to his family farm. At work, plaintiff worked for a company specializing in the erection of windmills and his duties included climbing hundreds of stairs and climbing in and out of heavy equipment. He was a "hands on" supervisor who sometimes filled in for absent workers. He also inspected the work of others, which required him to climb and walk on uneven ground, and was on his feet much of the day.

There is also no material factual dispute with respect to plaintiff's lifestyle both away from work and at work after the accident. Plaintiff had a period of time that he could not use both his shoulder and his ankle because of the injuries. Relative to his personal life, he no longer water skied, hiked, ran, jogged, or performed many of the activities he had previously done on his farm. Plaintiff had difficulty climbing stairs because of the limited range of motion of his fused ankle and instability. He could no longer safely operate his motorcycle and because of the difficulty getting in and out of his boat, he sold the boat. He is routinely in pain, ranging from a 3 to a 7 on a scale of 1 to 10, and by the end of a normal day, he is in so much pain that his doctor prescribed 2250 milligrams of Motrin daily. Plaintiff can walk only 10 minutes before experiencing pain. Relative to his work life, plaintiff missed approximately eight months of work as a result of his injuries, surgeries, rehabilitation, and convalescence. He can no longer climb the stairs leading to the turbines at the top of the windmills, can no longer climb on and off heavy equipment, cannot perform as a "hands on" supervisor, and has limitations as to where he

can walk on job sites due to his inability to walk on uneven ground. Plaintiff has to perform much of his oversight and inspections from within his vehicle because of the pain and physical limitations that resulted from the ankle injury sustained in the accident. On the basis of these facts, plaintiff has shown that the impairment affected his general ability to lead his normal life because it influenced some of his capacity to live in his normal, pre-incident manner of living.

Because all three requirements of MCL 500.3135(5) were satisfied, plaintiff established that he suffered a serious impairment of body function as a matter of law and the trial court properly directed a verdict in favor of plaintiff.

## II. EFFECT OF ADMISSION IN ANSWER; JUDICIAL NOTICE

Defendant argues that the trial court erred when it directed a verdict against her with respect to plaintiff's Count III, which was premised on Michigan's owner's liability statute, MCL 257.401. Defendant claims that the trial court improperly took judicial notice of the admission, which was contained in defendant's answer, that she was an owner of the vehicle at the time of the accident. "Judicial notice is discretionary, MRE 201(c), and we review for an abuse of discretion a trial court's decision whether to take judicial notice." *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013).

MCL 257.401(1) states, in pertinent part, that "[t]he owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law." Thus, since defendant was not driving the vehicle at the time of the accident, her liability was predicated on any ownership interest in the vehicle she may have had. Clearly, such issue was of paramount importance.

Under MCR 2.111(C), a party, through a responsive pleading, such as an answer, see MCR 2.110(A)(5), (B)(1), must do one of the following with respect to each allegation: state an explicit admission or denial; plead no contest; or state that the pleader lacks knowledge or information sufficient to form a belief as to the truth of the allegation, which has the effect of a denial. In his complaint, plaintiff alleged that Melvin was driving a vehicle that he and Anne owned. The response in the answer was, "The Defendants affirmatively state that Mr. Keyser was operating a motor vehicle owned by Anne Keyser." Elsewhere in the complaint, plaintiff alleged that "Anne Keyser was the co-owner of the car driven by Defendant Melvin Keyser." The response contained in the answer simply stated, "Admit."

There is no question that these responses in the answer constituted "explicit admission[s]." MCR 2.111(C)(1). Defendant on appeal argues that these admissions nonetheless should be treated like other "evidentiary" admissions. In other words, defendant contends that these admissions are simply *evidence*, which may be explained or disproved with other evidence, and that, consequently, they should not be considered binding on the admitting party.

There are indeed two different types of admissions: "judicial" admissions and "evidentiary" admissions. See *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 689; 630 NW2d 356 (2001).

-5-

When the term admission is used without any qualifying adjective, the customary meaning is an evidentiary admission, that is, words in oral or written form or conduct of a party or a representative offered in evidence against the party. Evidentiary admissions are to be distinguished from judicial admissions. Judicial admissions are not evidence at all. Rather, *they are formal concessions in the pleadings* in the case or stipulations by a party or counsel . . . . [2 McCormick, Evidence (7th ed), § 254, p 262.]

Our Supreme Court has explained that, while both are "admissions," the effects of these admissions are greatly different.

Although both judicial and evidentiary admissions are subject to all pertinent objections to admissibility that might be interposed at trial, "the judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case, whereas the evidentiary admission is not conclusive but is always subject to contradiction or explanation." [*Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 420-421; 551 NW2d 698 (1996), quoting 2 McCormick, Evidence (4th ed), § 254, p 142 (block quote format and other citations omitted).]

Defendant acknowledges that judicial admissions are binding on a party but argues that an admission in an answer is not a judicial admission. We disagree. While the Supreme Court in *Radtke* was addressing admissions in the context of requests for admissions under MCR 2.312, *Radtke*, 453 Mich at 419-420, nothing in *Radtke* suggests that admissions contained in an answer would not be judicial admissions as well. Indeed, the Court, in defining what constitutes a judicial admission, stated that it is a " 'formal *concession*[] in the pleadings* in the case.' " *Id.* at 420 (citation omitted; emphasis added). Thus, just because the *Radtke* Court was addressing a judicial admission in the context of MCR 2.312, it does not stand for the proposition that this is the *only* type of judicial admission. An answer to a complaint is a pleading, MCR 2.110(A)(5), and we see no reason to treat admissions in an answer differently than requests for admissions under MCR 2.312. As a result, defendant's admissions in her answer were judicial admissions and had the effect of withdrawing the fact of her ownership of the car as an issue in the case, thereby dispensing with the need for plaintiff to prove that fact. See *Radtke*, 453 Mich at 420, citing 2 McCormick, Evidence (4th ed), § 254, p 142; *Harrington v City of Nashua*, 610 F3d 24, 31 (CA 1, 2010) ("Ordinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation.").[5]

---

[5] This Court in *Lichnovsky v Ziebart Corp (On Remand)*, 123 Mich App 605; 332 NW2d 628 (1983), came to the same conclusion with respect to the effect of an admission contained in an answer. The Court stated:

In paragraph three of plaintiff's complaint, he alleged that the license agreement gave him the exclusive right in Genesee County to operate an auto body rustproofing business using "the name Ziebart." In their answer, defendants

Therefore, because the responses in the answer never were withdrawn or modified,[6] we hold that the trial court did not abuse its discretion in taking judicial notice of Anne's ownership of the car Melvin was driving at the time of the accident. Likewise, because Anne's ownership was conclusively established, the trial court did not err in directing a verdict in favor of plaintiff pursuant to Michigan's owner's liability statute.

### III. SUBSTITUTION OF ESTATE FOR INDIVIDUAL AS PARTY

Defendant argues that the trial court abused its discretion by allowing Melvin's estate to replace Melvin as a party more than 91 days after defendant filed a notice of suggestion of death. Defendant did not object to plaintiff's motion to replace Melvin as a party. Accordingly, the issue is not preserved, and our review is for plain error affecting substantial rights. *Nat'l Wildlife Federation v Dep't of Environmental Quality (No 2)*, 306 Mich App 369, 373; 856 NW2d 394 (2014). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

Under MCR 2.202(A)(1), a motion for substitution of parties must be filed after the death of a party. And "the action *must* be dismissed" if there is a failure to move for such a substitution "within 91 days after the filing and service of a statement of the fact of the death." MCR 2.202(A)(1)(b). However, the court rule allows for an exception: the action does not have to be dismissed for failure to timely move for the substitution of a deceased party if "the party seeking substitution shows that there would be no prejudice to any other party from allowing later substitution." *Id.*

At the trial court, defendant filed a notice of death of Melvin on August 24, 2016. It is not disputed that no party moved to replace Melvin as a party within the following 91 days. It

---

admitted the truth of that allegation. Defendants did not move to amend their pleadings thereafter. Therefore, they are bound by their admission. [*Id.* at 607-608.]

However, we note that *Lichnovsky* was decided under the previous version of court rules, see *id.* at 608, citing GCR 1963, 604, instead of under the current Michigan Court Rules of 1985. Thus, aside from the fact that *Lichnovsky* is a pre-1990 case and not binding, see MCR 7.215(J)(1), the analysis would not be controlling, per se. Regardless, it shows that the principle— admissions in answers, until withdrawn or modified are conclusively binding—is well established. See also *Ambo v Holcomb*, 29 Mich App 258, 259; 185 NW2d 59 (1970).

Further, defendant's reliance on caselaw that states that *allegations* contained in pleadings are not to be considered as binding on a party misses the point. Allegations, themselves, are not, but *admissions* to those allegations are a different matter. Indeed, one of the cases defendant cites, *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 514; 679 NW2d 106 (2004), provides that the general rule is that pleadings are to be treated as admissions.

[6] We review the correctness of the trial court's decision to deny defendant's request to amend the answer in Part IV of this opinion.

was only after plaintiff learned during trial that Anne was claiming for the first time that she was not an owner of the vehicle when plaintiff sought to substitute Melvin's estate for Melvin. Defendant did not object to the substitution.

On appeal, defendant simply avers that plaintiff's motion to substitute parties in the middle of trial caused prejudice to defendant. But defendant does not point to any facts or offer any explanation as to how she was prejudiced by the substitution. "It is not enough for an appellant in [her] brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, defendant has failed to show how the trial court plainly erred in allowing Melvin's estate to be substituted as a party in place of Melvin.

## IV. MOTION TO AMEND ANSWER

Defendant also argues that the trial court erred by denying her motion to amend the answer during trial. We review a trial court's decision on a motion to amend a pleading for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013).

A party may amend a pleading once as a matter of course if done within the limited period set forth in MCR 2.118(A)(1), which had long since passed in this instance. Otherwise, "a party may amend a pleading only by leave of the court or by written consent of the adverse party." MCR 2.118(A)(2). "Leave shall be freely given when justice so requires." *Id*.

A motion to amend ordinarily should be granted, and should be denied only for " '[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility . . . .' " *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997), quoting *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973) (alterations in *Weymers*).

In the middle of trial, on October 3, 2017, defendant argued that plaintiff would not suffer undue prejudice as a result of the amendment because any prejudice that plaintiff would suffer was of his own making as he had "elected not to substitute in or add a party" after Melvin's death. Plaintiff maintained that it was not necessary to substitute the estate because Anne had admitted that she was the owner of the vehicle and, therefore, was subject to owner's liability for Melvin's negligence. The trial court found that the delay in this case was unduly long and that plaintiff would suffer prejudice by the amendment because plaintiff's trial strategy had relied on defendant's admissions in the answer that had been made in June 2014.

"Delay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Weymers*, 454 Mich at 659, citing *Fyke*, 390 Mich at 656-657. " '[P]rejudice' exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because

-8-

important witnesses have died or necessary evidence has been destroyed or lost." *Weymers*, 454 Mich at 659.

A fair reading of the record leads to the conclusion that from the start of litigation, plaintiff relied significantly on defendant's admission that she was an owner of the vehicle. Plaintiff named both Melvin and Anne as defendants, presenting claims of negligence and negligence per se against Melvin and owner's liability for Melvin's negligence against Anne. And because plaintiff knew for certain that liability would attach to Anne, vis-à-vis her ownership in the vehicle Melvin was driving, plaintiff did not think it necessary to substitute Melvin's estate as a party in Melvin's place. While this decision might not have been the most prudent, it is somewhat understandable. On the other hand, defendant knew, or should have known, that she was not an owner of the leased vehicle and should have moved to amend her answer much earlier than in the middle of trial. See, e.g., *Weyers*, 454 Mich at 660 (quoting with approval the observation of Judge John L. Coffey of the United States Court of Appeals for the Seventh Circuit that the latitude afforded parties in amending their pleadings " 'is not a license of carelessness' "). Defendant's argument that any prejudice plaintiff suffered was caused by his failure to conduct discovery with respect to ownership of the vehicle is curious given defendant's admission that she was an owner of the vehicle. Given this admission, plaintiff has no reason to consider or otherwise worry about trying to prove that ownership element. See Part II of this opinion. Further, if defendant had been allowed to amend the answer, it would have been too late for plaintiff to alter trial strategy and too late to conduct any discovery on the issue of vehicle ownership. Therefore, under these circumstances, the trial court did not abuse its discretion when it denied defendant's motion to amend the answer.

## V. JURY INSTRUCTION ON COMPARATIVE NEGLIGENCE

Defendant next argues that the trial court erred in failing to instruct the jury on plaintiff's comparative negligence. We review claims of instructional error de novo. *Dadd v Mt Hope Church*, 486 Mich 857, 859-860; 780 NW2d 763 (2010).

Under the pure form of comparative negligence adopted in *Placek v Sterling Hts*, 405 Mich 638, 653-654, 660-662; 275 NW2d 511 (1979), a plaintiff's recovery of damages is reduced to the extent that the plaintiff's negligence contributed to the injury. In *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 623; 563 NW2d 693 (1997), this Court articulated the proper standard for discerning whether an instruction on comparative negligence is appropriate:

> "When deciding whether an instruction on comparative negligence is appropriate, the question is whether, in viewing the evidence most favorably to the defendant, there is sufficient evidence for the jury to find negligence on the part of the injured plaintiff. . . . Circumstantial evidence and permissible inferences therefrom may constitute sufficient proof of negligence." [Quoting *Duke v American Olean Tile Co*, 155 Mich App 555, 565-566; 400 NW2d 677 (1986).]

Defendant's contention that the instruction was warranted is based upon plaintiff's testimony at trial in response to his counsel's question about what he remembered regarding the accident. Plaintiff had just exited northbound I-75 and completed the exit loop to travel on

westbound M-46. He was heading toward the Motel Six that was near this intersection. Regarding the accident, plaintiff stated:

> I remember coming around the loop, and when I got approximately where this car is, I'm looking over here to Motel Six to see where I'm going. When I get—I basically look back up at, you know—as I'm driving and I see a car coming across the—when I first seen it, it was basically across the first two lanes of traffic and *coming across the median at me*.
>
> There's a sign right across the road that has two concrete abutments. I chose to hit the car rather than hitting the two concrete abutments. That's basically what I seen. It was short and brief, and that's all I remember. [Emphasis added.]

Defendant argues that plaintiff's testimony that he "chose to hit the car rather than hitting the two concrete abutments" indicates that plaintiff had the ability to avoid the accident and that the reasonableness of "the decision whether to strike another vehicle or strike an abutment" should have been left to the jury. He maintains that "[r]easonable minds could certainly find that choosing to 'hit' a vehicle as opposed to choosing to avoid a collision is evidence that the Plaintiff did not exercise due care for his safety." The evidence presented, however, established that plaintiff was driving in the right-hand westerly lane of the road when he was faced with a sudden emergency—the car being driven by Melvin coming toward plaintiff's car. Viewing the evidence most favorably to defendant, there is no evidence for the jury to find that plaintiff was negligent in any manner. Indeed, pursuant to the sudden-emergency doctrine,

> "[o]ne who finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." [*White v Taylor Distributing Co, Inc*, 275 Mich App 615, 622; 739 NW2d 132 (2007), quoting *Socony Vacuum Oil Co v Marvin*, 313 Mich 528, 546; 21 NW2d 841 (1946).]

Thus, even using hindsight and assuming that it would have been a better choice for plaintiff to have somehow struck these concrete abutments, the decision to not hit them is not negligence. The trial court's determination that plaintiff had to make a split-second decision to careen off the road into an abutment or otherwise be struck by defendant's car is clearly supported by the evidence. Further, it is just as clear that the emergency was not created by plaintiff. Consequently, the evidence shows that plaintiff's actions could not constitute negligence. See *id*. Therefore, the trial court did not err by failing to instruct the jury on comparative negligence.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan