# STATE OF MICHIGAN

# COURT OF APPEALS

In re FORFEITURE OF 2004 MERCURY

KALAMAZOO VALLEY ENFORCEMENT
TEAM,

        Plaintiff-Appellee,

v

2004 MERCURY, 2004 CHEVY TAHOE, AND
$3,500,

        Defendants,

and

DEONTA VASHAWN BRAGGS, RAYSHON
DANIEL BRAGGS, ARIANA DERRING,

        Claimants,

and

DENA SWINDLE-MORROW,

        Claimant-Appellant.

UNPUBLISHED
January 21, 2016

No. 323733
Kalamazoo Circuit Court
LC No. 2014-000177-CF

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff Kalamazoo Valley Enforcement Team (KVET) instituted this civil forfeiture action against Dena Swindle-Morrow and several other claimants. KVET's complaint alleged that claimant Rayshon Braggs used a 2004 Chevy Tahoe titled in Swindle-Morrow's name to transport and sell controlled substances, and that Swindle-Morrow knew that Braggs was using her vehicle for that purpose. Braggs is Swindle-Morrow's son.

Along with the complaint, KVET served Swindle-Morrow with a 26-page document titled: "Plaintiff's First Request For Discovery: Requests To Admit; Interrogatories; and Requests For Production of Documents." Swindle-Morrow answered the complaint in a timely

-1-

fashion but her response to the requested admissions was three weeks late. During that interim, KVET filed a motion for summary disposition asserting that Swindle-Morrow's failure to timely respond to the requests for admission established the grounds for forfeiture and paved the way for summary disposition in its favor. The circuit court agreed, granting summary disposition to KVET under MCR 2.116(C)(10).

Swindle-Morrow failed to timely respond to the admissions based on the advice of her son's counsel rather than due to deliberate indifference, laziness, or bad faith. While the better course of action would have been to file a motion seeking an extension of time in which to answer, Swindle-Morrow's brief delay caused KVET no prejudice and deprived her of the opportunity to defend against KVET's allegations. Because the circuit court abused its discretion in disallowing Swindle-Morrow's untimely responses, we reverse its grant of summary disposition and remand for further proceedings.

I.

KVET filed a 38-paragraph complaint against Swindle-Morrow, three other individuals, two vehicles, and $3,500 in United States currency. The complaint describes numerous drug transactions involving Braggs, recounts recorded jail conversations between Braggs and claimant Derring, and describes surveillance on Braggs conducted by KVET. Condensed to its essence, the complaint avers that Braggs delivered controlled substances on multiple occasions, transporting the contraband in a 2004 Mercury and a 2004 Chevy Tahoe.

Despite its length and wealth of detail, the complaint contains only three allegations regarding Swindle-Morrow: that she brought the 2004 Mercury to the body shop from which KVET later seized it, and that:

> 33. The DEFENDANT PROPERTY 2004 CHEVY TAHOE is registered to CLAIMANT DENA SWINDLE-MORROW. CLAIMANT DENA SWINDLE-MORROW has a valid driver's license. CLAIMANT RAYSHON BRAGGS does not possess a valid driver's license.
>
> 34. CLAIMANT DENA SWINDLE-MORROW is the owner only in title. CLAIMANT RAYSHON BRAGGS has had contact with officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM driving DEFENDANT PROPERTY 2004 CHEVY TAHOE on multiple occasions. CLAIMANT RAYSHON BRAGGS referred to the vehicle as being "his." CLAIMANT DENA SWINDLE-MORROW is on notice of the use of DEFENDANT PROPERTY 2004 CHEVY TAHOE for the sales of controlled substances based on these numerous police contacts and subsequent court activity.

KVET served Swindle-Morrow with the complaint on June 13, 2014. A 26-page-document containing requests for admission, interrogatories, and requests for production of documents accompanied the complaint. The requests for admissions consist of 36 numbered paragraphs. Almost every paragraph corresponds precisely to a paragraph in KVET's complaint. As in the complaint, only three of the requests for admission relate to Swindle-Morrow; those

paragraphs are summarized or recapitulated above. Here are several examples of the other requested admissions submitted to Swindle-Morrow:

20. Officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM located DEFENDANT PROPERTY $3500 US CURRENCY in a diaper bag within CLAIMANT ARIANA DERRING'S bedroom. DEFENDANT PROPERTY $3500 US CURRENCY was a large stack of US currency with a single black rubber band around it. Prior to locating DEFENDANT PROPERTY $3500 US CURRENCY, CLAIMANT ARIANA DERRING told officers of the KALAMAZOO ENFORCEMENT TEAM that she did not have any large amounts of money within the apartment. Upon the discovery of DEFENDANT PROPERTY $3500 US CURRENCY, CLAIMANT ARIANA DERRING told officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM that sometimes she gave money to CLAIMANT RAYSHON BRAGGS to save for her, small amounts of money. CLAIMANT ARIANA DERRING also said that DEFENDANT PROPERTY $3500 US CURRENCY was not her money and she had no idea where it came from.

21. Officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM also located keys that belonged to a storage unit within Storage Pros located at 1515 11th Street, Kalamazoo County, State of Michigan. CLAIMANT ARIANA DERRING told officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM that she was the only person with access to the storage unit.

22. On or about January 10, 2014, officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM executed a search warrant on the storage unit located at Building 11, Unit 6 using the keys secured from the search at 1912 Colgrove, Apartment 204. Officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM located marihuana inside a dresser in the storage unit.

23. CLAIMANT RAYSHON BRAGGS has been incarcerated at the Kalamazoo County Jail on unrelated charges. Phone calls and jail visits at the Kalamazoo County Jail are all subject to recording. Officers of the KALAMAZOO VALLEY ENFORCEMENT TEAM have reviewed the contents of the phone calls and visits to or from CLAIMANT RAYSHON BRAGGS.

24. CLAIMANT RAYSHON BRAGGS and CLAIMANT ARIANA DERRING spoke to each other on the telephone numerous times. CLAIMANT RAYSHON BRAGGS asked about the money located at Ms. Derring's apartment, referring to DEFENDANT PROPERTY $3500 US CURRENCY. CLAIMANT ARIANA DERRING indicated that she knew nothing about the money being there. CLAIMANT RAYSHON BRAGGS later indicated that he should have told Ms. Derring about the money. CLAIMANT ARIANA DERRING stated that she wished she knew about much [sic] she was "saving." Other conversations concerned CLAIMANT ARIANA DERRING receiving money at CLAIMANT RAYSHON BRAGG's [sic] direction. Their discussion

-3-

also involved references to the sale of controlled substances. CLAIMANT ARIANA DERRING refers to DEFENDANT PROPERTY 2004 CHEVY TAHOE as belonging to CLAIMANT RAYSHON BRAGGS. CLAIMANT RAYSHON BRAGGS refers to DEFENDANT PROPERTY 2004 CHEVY TAHOE as his vehicle. CLAIMANT ARIANA DERRING refers to DEFENDANT PROPERTY 2004 MERCURY as belonging to CLAIMANT RAYSHON BRAGGS.

These paragraphs typify the balance of the requested admissions, which sought Swindle-Morrow's affirmation or denial of factual information almost certainly outside her realm of knowledge.

KVET served Swindle-Morrow with the complaint and discovery requests on June 13, 2014. Swindle-Morrow timely filed her answer to the complaint on June 26, 2014. Under MCR 2.312(B)(1), Swindle-Morrow had 42 days to respond to the requests for admission, or until July 25, 2014. KVET filed its motion for summary disposition on July 29, 2014, asserting that because Swindle-Morrow had not submitted responses, the requests were deemed admitted. No genuine issues of material fact remained, KVET urged, necessitating summary disposition in its favor.

Swindle-Morrow filed pro se responses to the requests for admission on August 20, 2014, three weeks after they were due. Swindle-Morrow's responses asserted that KVET's complaint and requests for admission had incorrectly identified the vehicle seized as a "2004 Chevy Tahoe." She maintained that her vehicle (and the one seized by KVET) was actually a 2004 Chevy Suburban. She denied that she owned the car "in title only," that the Suburban was used or intended to be used to transport contraband, and that she possessed knowledge of Braggs' illegal use of the vehicle. Swindle-Morrow's response to KVET's motion for summary disposition insisted that had she answered the requests for admission in a timely fashion, she "might have exposed Mr. Braggs to very damaging 'Other Acts' evidence to which Mr. Braggs have [sic] not been charged with."

Swindle-Morrow appeared pro se at the summary disposition hearing. Counsel for Braggs advised the court that KVET had filed its civil forfeiture action while criminal charges were pending against Braggs, and that "at least five criminal allegations" in the forfeiture complaint were unrelated to the pending charges. Swindle-Morrow was a witness in Braggs' criminal case, counsel explained, and he advised her that any answers she provided to the requests "may come up in your questioning" during Braggs' trial. Furthermore, counsel complained, KVET's discovery pleading stated that "the worst that could happen . . . is they would do a Motion to Compel you answer [sic]."[1] Any harm to the prosecutor on account of the delayed answers, counsel emphasized, "has to be de minimis." Swindle-Morrow told the court

---

[1] The discovery document served with the complaint contains a paragraph titled "Possible Sanctions," which states in relevant part: "If you fail to respond to an interrogatory or a request, a motion for an order compelling a responsive [sic] in accordance with MCR 2.313 will be made."

that she had worked hard for the money needed to buy "the truck" and that she wanted it back, "because I wasn't involved in anything illegal."

The prosecutor responded that Swindle-Morrow should have brought a "request for a stay in proceedings by simply indicating that there was a Fifth Amendment right." Braggs' counsel then advised the court that the 2004 Tahoe referenced in the KVET pleadings is a different vehicle than the 2004 Chevy Suburban seized from Swindle-Morrow.

The circuit court acknowledged that Swindle-Morrow had "implicit[ly]" requested permission to file a late answer to the requests for admission, which triggered an exercise of discretion guided by the factors set forth in *Janczyk v Davis*, 125 Mich App 683, 690; 337 NW2d 272 (1983). The court observed that the *Janczyk* factors require a trial judge "to balance between the interest of justice, and diligence and litigation. The severity of the sanction," the court continued, "should be tempered by a consideration of the equities involved. In other words, a rigid rule is sometimes unjustified, but too lenient a rule will undermine the policy of the court rule itself." The court concluded that Swindle-Morrow lacked any ground for objecting to the requests for admission. Although the court recognized that KVET had raised no claim of prejudice, the court summarized: "I realize they're representing themselves, but the court rules apply to all whether they have a lawyer or whether they do not." Summary disposition was granted as to all parties. Only Swindle-Morrow has appealed.

II.

We review de novo a circuit court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, we review de novo issues of court rule interpretation and application. *Bullington v Corbell*, 293 Mich App 549, 555; 809 NW2d 657 (2011). A circuit court's decision to deny permission to file late answers to requests for admission is subject to review for abuse of discretion. *Bailey v Schaaf*, 293 Mich App 611, 620; 810 NW2d 641 (2011), vacated in part on other grounds 494 Mich 595 (2013). An abuse of discretion occurs when the decision falls outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

III.

Most discovery devices seek information from the opposing side. Requests for admissions are a different species of discovery tool, in that they solicit concessions that certain discovered facts are true or particular documents genuine. While interrogatories and depositions supply information integral to evidentiary proof at trial, requests for admission enable the parties to eliminate issues, witnesses, and disputes. Admissions simplify the matters in controversy and thereby streamline the trial process. The court rule governing requests for admission "basically serves a two-fold function: (1) to limit the areas of controversy and (2) to save the time, energy and expense that would otherwise be required for preparing proof and submitting evidence on matters properly subject to admission." 2 Longhofer, Michigan Court Rules Practice (6th ed), § 2312.3, p 429.

KVET used its requests for admission in an entirely different spirit. Rather than employing the requested admissions to shorten and simplify an eventual trial, KVET's decision

to serve lengthy and (as to Swindle-Morrow) mostly irrelevant requests with the complaint and during Braggs' trial strongly suggests that KVET intended to set a trap for a pro se litigant.

MCR 2.312(A) permits a party to serve another party with "a written request for the admission of the truth of a matter" relevant to the proceedings, which "relates to statements or opinions of fact or the application of law to fact, including the genuineness of documents described in the request." Subrule (A) concludes: "Each matter of which an admission is requested must be stated separately." And "each matter as to which a request is made is deemed admitted" unless the opposing party supplies an answer within the requisite time frame or files an objection. MCR 2.312(B)(1). On a practical level, the failure to answer or object to an admission may have grave consequences for a litigant. Admissions made or deemed as such under MCR 2.312 are "judicial admissions" which are "conclusive in the case," and not subject to "contradiction or explanation." *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 420-421; 551 NW2d 698 (1996) (quotation marks and citations omitted).

The rule's specification that each requested admission "be stated separately" helps protect the integrity of the admissions process. Simple, concise requests are likely to yield responses that serve the function of the rule. "When a party 'admits' an assertion in a request for admission, the case is expedited and valuable resources are conserved, to the extent that some issues are eliminated and others narrowed." *Id.* at 426. Conversely,

[w]hen a party's response goes beyond the scope of the request . . . these goals are not achieved. To the contrary, such a response may needlessly complicate issues already present in the case and even create new ones. Neither are the goals underlying the court rule served by inviting parties to make questionable or false admissions, knowing that their statements cannot be used in other proceedings. [*Id.*]

For this reason, it behooves drafters of requests for admission to carefully sculpt the language of each requested admission, rather than submitting wordy, fact-cluttered asseverations. As the Longhofer text puts it:

As only that portion of the response that directly meets and admits a request is considered a judicial admission governed by MCR 2.312, the requests should be stated with a high degree of specificity and worded with great care. Factual requests should be made simply and directly, and should be framed so as to avoid, to the extent possible, the insertion of argumentative statements or other unresponsive matter in the answers. Each separable fact should be the subject of a separate request, so that an unreasonable refusal to admit cannot be justified on the ground that a part of the statement is untrue or not reasonably subject to admission. A statement of facts to be admitted should be phrased in the exact language that is sought to be agreed upon, approximating in form a proposed stipulation of facts. The ideal request permits a simple yes or no answer, or a simple direct answer as to why the party cannot answer. [Longhofer, § 2312.6, p 431.]

-6-

Measured under this standard, KVET's requests fall short. They do not summarize discrete facts, most are clearly outside the realm of Swindle-Morrow's knowledge, and few bear relevance to KVET's claim against the Chevy Tahoe. The requests clearly violate the letter of the court rule, which requires that "each matter" for which an admission is sought be stated separately, rather than in multisentence, complicated paragraphs. Given the timing and the structure of these requests for admissions, we suspect that their service with the complaint was not intended to narrow the issues for trial, but "with the wild-eyed hope that the other side will fail to answer and therefore admit the essential elements (that the party has already denied in its answer)[.]" *Perez v Miami-Dade Co*, 297 F3d 1255, 1268 (CA 11, 2002). But we do not decide the case on this basis.

"For good cause," MCR 2.312(D)(1) permits a court to "allow a party to amend or withdraw an admission. The court may condition amendment or withdrawal of the admission on terms that are just." In *Janczyk*, 125 Mich App at 692-693, we held that a trial judge must balance three factors in determining whether to allow a party to file late answers to a request for admissions:

> First, whether or not allowing the party to answer late will aid in the presentation of the action. In other words, the trial judge should consider whether or not refusing the request will eliminate the trial on the merits. Obviously, this factor militates against granting summary judgment. Second, the trial court should consider whether or not the other party would be prejudiced if it allowed a late answer. Third, the trial court should consider the reason for the delay: whether or not the delay was inadvertent. [Quotation marks and citations omitted.][2]

The first *Janczyk* factor weighs heavily in Swindle-Morrow's favor. The circuit court's refusal to permit the late admissions wholly dispensed with the case, eliminating the need for trial on the merits. When presentation of the action is better served by allowing late answers to the admission, "this factor militates against granting summary [disposition]." *Id.* at 692. The first *Janczyk* factor has special relevance here, as Swindle-Morrow's late responses indicate that KVET may have seized the wrong vehicle—her Chevy Suburban, rather than the Tahoe referenced in the pleadings.

The second *Janczyk* factor examines whether the requesting party would suffer prejudice should the court allow a late answer. "This particular prejudice is prejudice in proving the case." *Id.* at 692 n 5. We discern no prejudice. Allowance of the late answers would not impair or impede KVET's ability to obtain evidence that the car it seized was used in the drug trade, that Swindle-Morrow was aware of that use, and that KVET in fact seized the proper Chevy. At the time summary judgment was granted discovery had barely commenced and no trial date had been set. Thus, this factor also weighs strongly in favor of permitting the late answers.

---

[2] Although *Janczyk* was decided under GCR 1963, 312.2 rather than MCR 2.312(D)(1), the "good cause" standard remains the same.

The third *Janczyk* factor directs "the trial court [to] consider the reason for the delay: whether or not the delay was inadvertent." *Id.* at 692-693. Inadvertence is one example of "good cause" for allowing late admissions. However, it is not the only possible ground for a good cause finding. MCR 2.312 does not define "good cause." This Court has determined that "good cause" means "a legally sufficient or substantial reason." *In re Utrera*, 281 Mich App 1, 11; 761 NW2d 253 (2008) (quotation marks and citation omitted). Contrary to the circuit court's ruling, we find that a legally sufficient and substantial reason for Swindle-Morrow's slight delay in responding to KVET's admissions was established here. Swindle-Morrow withheld her responses on the advice of her son's counsel, rendered during the time that Swindle-Morrow's son stood trial on a felony charge. This reason for delay seems to us just as "substantial" or "legally sufficient" as an attorney's inadvertence or oversight. We stress that Swindle-Morrow never proposed that she intended to ignore the requests for admission; she sought only to slightly delay her responses. While filing a motion to that effect certainly would have been the better course, it is highly unlikely that such a motion would have been heard during the three weeks that elapsed between the due date of the answers and the entry of summary disposition in favor of KVET. Indeed, the short interval between the commencement of the action and the delayed filing of Swindle-Morrow's responses weighs heavily in favor a trial on the merits rather than "diligence" in litigation.

In the federal courts, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *United States v Hougham*, 364 US 310, 317; 81 S Ct 13; 5 L Ed 2d 8 (1960) (quotation marks and citation omitted). The Michigan Court Rules must be applied in a similar fashion: "These rules are to be construed to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties." MCR 1.105. As noted in *Shawl v Spence Bros Inc*, 280 Mich App 213, 239; 760 NW2d 674 (2009) (O'CONNELL, J., concurring), "the Michigan Court Rules are not a procedural tightrope upon which a litigant must balance carefully and perfectly or be thrown out of court." (Quotation marks and citation omitted). Disposition of claims on their merits is preferred. *Alken-Ziegler, Inc v. Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). "Litigants who purposefully and repeatedly act outside the scope of, or fail to follow clear and concise, rules deserve special and prompt attention from the court." *Shawl*, 280 Mich App at 240-241 (O'CONNELL, J., concurring). However, procedure should not always prevail over substance and the merits of a claim should not always be "left in the wake created by the procedural rules." *Id.* at 241-242.

The circuit court correctly recognized that it was required to "balance between the interests of justice and diligence in litigation." *Janczyk*, 125 Mich App at 691. The *Janczyk* factors overwhelmingly weighed in favor of accepting the late responses. Allowing the answers would aid in the presentation of the action, there was no prejudice, and Swindle-Morrow offered a reasonable basis for the slight delay. Rigid application of the time limit for responding to admissions unjustly affected Swindle-Morrow's substantial right to defend against KVET's claim. Accordingly, the trial court's decision fell outside the range of reasonable and principled outcomes.

We reverse and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly